WILLIAM ROBINSON *v.* STATE OF INDIANA.

[No. 769S165.  Filed June 22, 1973.]

*Jack Rogers, Rogers & Rogers,* of Franklin, *Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of murder in the first degree.[1] He was sentenced to life imprisonment. His appeal presents four alleged errors for our determination:

(1) The overruling of his plea in abatement predicated upon a lack of a judicial determination of probable cause for the issuance of the arrest warrant.

(2) The denial of his constitutional right to counsel at his preliminary hearing and the right to an effective preliminary hearing, with the right to call witnesses and to cross-examine the state's witnesses, at the conclusion of which hearing he was bound over to the grand jury.

(3) The denial of his motion to discharge the jury panel for improper questions designed to prejudice and put to it by the prosecutor during the voir dire examination.

(4) The permitting of the jury, over his objection, to view the scene of the alleged crime.

(1 & 2) We agree with the defendant that his constitutional rights were violated by the issuance of the arrest warrant without a determination of probable cause by a neutral and detached magistrate and again, as charged by him, by holding a "kangaroo" preliminary hearing at which his rights were totally disregarded.

"* * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman* v. *California* (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705. However, it is our opinion that these errors related only to the detention of the defendant prior to the return of the indictment by the grand jury. No evi-

---

1. "Murder—First degree—Penalty.—Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life. [Acts 1941, ch. 148, § 1, p. 447.]" 1956 Repl. Burns Ind. Stat. Ann. § 10-3401, IC 35-13-4-1.

dence was obtained directly or indirectly as a result of the illegal arrest and detention, and we see nothing therein that could have prejudiced him upon the trial. Accordingly, such errors are here regarded as harmless within the *Chapman* rule.

(3) At the time of the trial of this case, neither the death penalty nor the exclusion from jury service, in capital cases, of persons holding conscientious objections precluding the assessment of the death penalty had yet been proscribed by the Supreme Court of the United States.

The prospective jurors were being interrogated by the trial prosecutor, ostensibly to determine their feelings with regard to the death penalty. They had previously indicated their acceptance of the same as appropriate under certain circumstances and that they could vote for it if the circumstances warranted. Thereupon, the prosecutor stated that he wanted to determine the circumstances under which they would vote for the death penalty and asked the jurors two additional questions. The first assumed a murder by a contract killer following his parole from a life sentence for a previous murder and bore no similarity to the circumstances of this case. The second question was: "If a father killed his twenty year old daughter because she resisted his sexual advances, could you vote for the death penalty then?" The facts assumed by this question, although hypothetically stated, bore a striking resemblance to the facts of the case at hand. The victim was the daughter of the accused. She was twenty years old. These questions were propounded to five prospective jurors, two of whom ultimately served upon the jury. Moreover, they were propounded and repeated in the presence of the entire panel. No evidence was presented upon the trial court that such was the motive of the defendant, although there was evidence of a long history of dissention between the defendant and his daughter; and various questions (some admitted and some not) and some answers bore the innuendo that the defendant had lust for his daughter. Viewing the

evidence in a light most favorable to the state, the most that we can acknowledge is that it supported a suspicion that the friction between the defendant and the victim was incest oriented. There was no evidence presented from which the jury could have drawn such an inference beyond a reasonable doubt. Although not determinative upon the issue of whether or not such question was proper, it is significant that the case had been previously tried and resulted in a hung jury. No such evidence had been presented at the prior trial, and when the motion for discharge was argued, the prosecutor made no claim that he expected to present such evidence. We think such questions were clearly improper, prejudicial and deliberately calculated to prejudice the fair trial guaranties of the defendant, by conditioning the prospective jurors to receive the impending evidence, not with an open mind and resolution to give the defendant the benefit of reasonable doubt but rather with the seeds of suspicion firmly planted and anxiously awaiting germination. We have recently written upon matters to be considered in determining whether or not a mistrial should be declared or the jury merely admonished, in instances where improper testimony has gone before the jury. Among others, we regarded as material to such a determination, a consideration of whether there had been deliberate action on the part of counsel to present the improper matter and whether or not the objectionable testimony or misconduct had been repeated. *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312. Further, in that case, we held that an appellant had sustained the burden of showing that he was harmed "* * * *when it is made, by all the circumstances, to appear that the error placed him in a position of grave peril to which he should not have been subjected.*" (Emphasis ours). *White* v. *State, supra*, 272 N. E. 2d at 320. The "bad faith" factor and the "grave peril" standard are properly applicable in the case before us.

We are aware of the practice, one of long standing in our courts, of lawyers trying their cases by their voir dire

examination of the jury. It is so engrained in our state as to have become accepted as tactically proper and necessary. In no sense, however, does it coincide with fair trial standards, among the objects of which are to provide an impartial and unbiased jury capable of understanding and intelligently assessing the evidence. Much time and energy are consumed in interrogating not with a view towards culling prospective jurors because of bias or prejudice but to the end that bias and prejudice may be utilized to advantage and prospective jurors cultivated and conditioned, both consciously and subconsciously, to be receptive to the cause of the examiner. Many excellent lawyers genuinely believe that their case has been determined by the time the jury has been sworn, and they may well be correct. We think this practice is repugnant to the cause of justice and should terminate. We think also that this can be best accomplished by the trial judges' assumption of a more active role in the voir dire proceedings and by exercising, rather than abdicating, his broad discretionary power to restrict interrogation to that which is pertinent and proper for testing the capacity and competence of the jurors.

"* * * It has been said that the ultimate function of voir dire is to explore the nuances of conscience to determine whether a prospective juror is able to participate fairly in the deliberations on the issue of guilt, confining his judgment to the facts as presented, and that the overall purpose of voir dire examination of jurors is to determine the real state of their minds so that a fair and impartial jury can be chosen." 47 Am. Jur. 2d 786, *Jury*, § 195.

"The extent to which a party may examine a prospective juror touching his qualifications to serve is not governed by fixed rules, but rests largely in the discretion of the trial court." 17 I. L. E. 612, *Jury*, § 110, and cases there cited. It has been held to be improper to examine jurors as to how they would act or decide in certain con-

tingencies or in case certain evidence should be developed on the trial. 17 I. L. E. 614, *Jury*, § 110, and cases there cited.

We think that the aforementioned interrogation was improper and highly prejudicial. Properly raised and presented, it would have warranted reversal of Defendant's conviction. To preserve such error, however, Defendant should have moved for a mistrial at the conclusion of the state's case in chief, because it was within the context of the evidence presented that the propriety of the interrogation and the probability of harm therefrom had to be made.

(4) After the jury had been selected and sworn, and before the introduction of evidence, the jury was transported to the scene of the alleged crime for the purpose of viewing the premises. This was done upon motion of the state and over the specific objection of the defendant. The statute upon the subject is as follows:

> "Inspection of place.—Whenever, in the opinion of the court and with the consent of all the parties, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person, other than the officer and the person appointed to show them the place, shall speak to them on any subject connected with the trial. [Acts 1905, ch. 169, § 264, p. 584.]" 1956 Repl. Burns Ind. Stat. Ann. § 9-1809, IC 35-1-37-3.

We have previously held that in light of this statute, to send a jury to view the premises in a criminal case, without the consent of the defendant, was reversible error. ■ *Barber* v. *State* (1927), 199 Ind. 146, 155 N. E. 819.

There may be a serious question as to whether or not the legislature may properly proscribe that which appears to be clearly a judicial prerogative. Eminent authority insists: "That the Court is empowered to order such a view, in consequence of its ordinary common-law function, and irre-

spective of statutes conferring express power, is not only naturally to be inferred, but is clearly recognized in the precedents." *Wigmore on Evidence,* Third Edition, § 1163, p. 268, and cases there cited. "Statutes now regulate the process in almost every jurisdiction of the United States, but it may be assumed that the juridical power to order a view exists independently of any statutory phrases of limitation." *Wigmore, supra,* p. 273. The state urges us to overrule *Barber* v. *State, supra,* to preserve the judgment of the trial court. A situation similar to the one at hand was present in *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514. In *Faulkner,* a trial for felony, the jury had been permitted to separate over the objection of the defendant, and this was assigned as error. At common law it was not permissible for a jury to separate even with the defendant's consent, and the statute providing for the court to admonish the jury when they *are permitted* to separate, it had been held, did not change the rule but was intended to apply to separations that were not objected to. *Anderson* v. *State* (1867), 28 Ind. 22. In *Faulkner, supra,* we observed that many states had modified this rule by statute and placed the matter in the discretion of the courts and that many text book writers said that the tendency was to leave the question of separation of the jury to the discretion of the court. Nevertheless, we observed that we were not authorized to change a rule which had been generally recognized so long as an absolute rule of law governing the rights of a defendant in a criimnal case. We think the same logic applies here, and while we question the soundness of the statute and declare our right to modify or abrogate it by rule operating prospectively, we are especially reluctant to strike it down retrospectively, where the consequences would be the denial of a new trial to a defendant under life sentence obtained under the circumstances of this case. Accordingly, the judgment of the trial court is reversed and a new trial ordered.

DeBruler, Givan and Hunter, JJ., concur; Arterburn, C.J., dissents.

Note.—Reported in 297 N. E. 2d 409.