Robert FOSTER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 381S64.

Supreme Court of Indiana.

June 30, 1982.

Susan Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Forgery, Ind.Code § 35–43–5–2 (Burns 1979), and of being an Habitual Offender, Ind.Code § 35–50–2–8 (Burns 1979), and was sentenced to thirty-five (35) years imprisonment. This appeal raises several issues, one of which compels us to order a new trial.

During the voir dire of the jurors the Prosecutor read the Information and then attempted to recite the Forgery statute:

"Now, the statute which makes this illegal or unlawful is simply what we call our Forgery Statute, and I am only going to give you—and the Court will instruct you as to the whole statute, and there is possibly three or four different ways that the crime of Forgery can be committed. I don't believe that we can be concerned with more than possibly two of those in this case. A person—and I am quoting from the statute—

"MR. CARUSILLO: Your Honor, at this time I am going to object to Mr. Walker instructing the jury. I believe that the instruction of the jury is the province of the Court and that it is improper for Mr. Walker to assert that power and instruct the jury.

"THE COURT: The objection is noted, but I will allow the statute to be read as a part of the voir dire process to determine the reactions to that statute." (R. at 245–46).

The trial court allowed the Prosecutor to explain several hypothetical factual examples which would or would not constitute Forgery. When the jurors indicated by their silence that they understood the explanations, the Prosecutor turned to the statute on aiding and abetting:

"Now, additionally in Indiana under what we call now our old penal code, we used to have what was called an accomplice or an accessory statute, and they have completely changed the language of that, although I don't believe that they changed the meaning of it a great deal, but now we have a statute that is called and I would submit to you that they probably could have come up with a shorter title, aiding, inducing or causing an offense. That statute provides—

"MR. CARUSILLO: Your honor, at this time I will again object to Mr. Walker instructing the jury as to the law and I would like the record to reflect a continuing objection to all such instruction by the Prosecutor." (R. at 249).

The trial court ruled as follows:

"THE COURT: Okay, objection is overruled.

"MR. CARUSILLO: Can you show a continuing objection?

"THE COURT: I will note it as a continuing objection." (R. at 250).

After educating the jurors about accessory liability, the Prosecutor, over Defendant's continuing objection, engaged in a lengthy lecture about penalties and the due process requirements of the sentencing statute. He informed the jury of the penalties for Forgery, Class C Felony. He then discussed the trial court's options with respect to aggravating circumstances and mitigating circumstances. He began to treat the trial court's power to suspend a sentence and the definition of a felony when he decided to inquire if the jurors thought the range of penalties for Forgery was either inadequate or too harsh. Some discussion with the jurors ensued about the trial court's lack of power to order probation or a suspended sentence where the Defendant had "previously been convicted of an unrelated felony." The Prosecutor then continued:

"MR. WALKER: Now, as I explained, the Court can suspend any part and I started to explain what a felony was. A felony in Indiana is simply defined as any crime or offense for which a person could be imprisoned for more than one year.

Okay? If the person could only receive up to one year imprisonment, let's say simple assault, that is what we call a misdemeanor, and if you could only get up to one year in prison, that's not a felony. Now, it doesn't matter whether or not he actually got the time, or strike that—served the time. In other words, let's assume that a defendant, if convicted of Theft, and it remains what we call a Class D Felony, it is not reduced, and gets probation, or has his sentence or gets a two year sentence initially for theft of a car, and that sentence is suspended, then he commits the offense of Forgery subsequent to that, subsequent to being in Court and going all though (sic) the first charge and getting his suspended sentence, probation, he then commits Forgery, then he has a prior, unrelated felony conviction and the sentence for Forgery cannot be suspended. Now, the Judge can only give him two years on it, or all the way up to 8 years, but the Judge cannot suspend that. Does anybody have any question about that? Does anybody have any disagreement with that concept? Or believe that to be too harsh a concept? Consider that situation, but consider that the first felony occurred 15 or 20 years ago. Do you believe that to be too harsh a result then? That the defendant would have to serve at least two years, or get at least a two year sentence, it doesn't mean that he would have to serve two years.

"Okay, let me explain one further thing, number one the Court cannot impose any sentence until after obviously number one, there has been a conviction, and then number two, what we call a pre-sentence investigation. Now, a presentence investigation is conducted by our Probation Department and I would—I think that defense counsel, the Judge and I could all agree that we probably have as good a Probation Department when it comes to preparing and furnishing pre-sentence reports as exists anywhere in the State. A pre-sentence report that is filed in a felony case will typically consist of three, four, five pages,

and in addition there might be quite a bid (sic) of memoranda attached to that, there may be psychological evaluations, there may be drug or alcohol evaluations of the defendant. The purpose of that is to give the Court as much information as possible about a defendant in order to enable the Court to design what it believes to be a rehabilitative type of sentence.

"The pre-sentence investigation will have the defendant's entire family history, his marital history, to a large extent his educational and employment history, and his criminal history, and when the Court, only after the Court has received that from the Probation Department, and it is always conducted within 30 days unless it is extended, and the defendant has to agree to that extension, only then can the Court determine and impose a sentence. In our criminal justice system, with the exception of capital punishment cases, the jury never determines what the sentence will be, it never does that. It never determines the amount of time that a defendant will spend incarcerated, nor does the jury have anything to do with imposing a criminal penalty or punishing him. When the jury returns a verdict of guilty, there will be nothing on that verdict about any sentence. It's (sic) job is completed, completely done, with respect to that particular case. They have nothing to do with either determining the penalty or imposing it. Does anybody have any question about that? Okay." (R. at 257–59).

He also explained the good time credit system, both pre-trial and post conviction, the parole system, and the Department of Corrections' responsibility to choose the degree of security for confinement, which included the option of a work release program.

In *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409, we discussed the potential for abuse of the voir dire examination of the jurors:

"We are aware of the practice, one of long standing in our courts, of lawyers trying their cases by their voir dire exam-

ination of the jury. It is so engrained in our state as to have become accepted as tactically proper and necessary. In no sense, however, does it coincide with fair trial standards, among the objects of which are to provide an impartial and unbiased jury capable of understanding and intelligently assessing the evidence. Much time and energy are consumed in interrogating not with a view towards culling prospective jurors because of bias or prejudice but to the end that bias and prejudice may be utilized to advantage and prospective jurors cultivated and conditioned, both consciously and subconsciously, to be receptive to the cause of the examiner. Many excellent lawyers genuinely believe that their case has been determined by the time the jury has been sworn, and they may well be correct. We think this practice is repugnant to the cause of justice and should terminate. We think also that this can be best accomplished by the trial judge's assumption of a more active role in the voir dire proceedings and by exercising, rather than abdicating, his broad discretionary power to restrict interrogation to that which is pertinent and proper for testing the capacity and competence of the jurors." *Id.* at 520–21, 297 N.E.2d at 411–12.

The function and purpose of the voir dire examination is to ascertain whether or not the jurors can render a fair and impartial verdict in accord with the law and the evidence. *Blackburn v. State*, (1979) Ind., 390 N.E.2d 653, 656. The inquiry should center upon eliciting information from the prospective jurors in order to uncover a basis for a challenge for cause. A detailed lecture about the entire scheme and procedure of sentencing could not achieve this end. Since the jury no longer serves any function with respect to determination of the sentence, it is not to be advised of the possible penalties. *State v. Williams*, (1982) Ind., 430 N.E.2d 756, 758; *Taylor v. State*, (1981), Ind., 420 N.E.2d 1231, 1234; *Morgan v. State*, (1981) Ind., 419 N.E.2d 964, 968; *DeBose v. State*, (1979) Ind., 389 N.E.2d 272, 273. While we have allowed the trial court to instruct the jury that the judge alone assesses the penalty, *Rock v. State*, (1981) Ind., 426 N.E.2d 1320, 1322; *Bailey v. State*, (1980) Ind., 412 N.E.2d 56, 60–61, we have consistently upheld the trial court's refusal to inform the jury of the possible punishments. *Jones v. State*, (1981) Ind., 425 N.E.2d 128, 133; *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116, 120; *Comstock v. State*, (1980) Ind., 406 N.E.2d 1164, 1167; *Craig v. State*, (1979) Ind., 398 N.E.2d 658, 660.

■ In the case at bar the trial court allowed the Prosecutor to educate the jury about matters which are not a proper subject for instructions. The extent of the statutory due process afforded a defendant before pronouncement of sentence and the discretion confided in the sentencing judge do not assist the jury in fulfilling the serious responsibility assigned to it, which is to determine the guilt or innocence of the defendant based solely upon the evidence presented at trial. The nature and length of the potential incarceration are similarly irrelevant. The mention of these matters may raise misconceptions in the minds of the jurors. *See Feggins v. State*, (1977) 265 Ind. 674, 685–86, 359 N.E.2d 517, 524. They may be led to believe that if the case is close or the penalty is severe, they should err on the side of conviction. *See Bryant v. State*, (1933) 205 Ind. 372, 381, 186 N.E. 322, 325. After all, the Prosecutor had said that the defendant may never serve any time in jail. The trial court will have a pre-sentence investigation report about the defendant's background, which may contain information the jurors will not receive. The report will "enable the Court to design what it believes to be a rehabilitative type of sentence." The judge may suspend the sentence or order probation, and even if the defendant does go to jail, he may be paroled or may participate in a work release program. The Prosecutor succeeded in planting seeds of ambiguity, which might sprout in the privacy of the jury room when the jurors considered the evidence to arrive at a verdict. That verdict reflects the jurors' collective view of the facts of an event or

incident and not a consensus of what constitutes a just disposition of the matter.

We recognize that either side may employ the voir dire to its advantage in order to appeal to the jurors' sense of equity. Several cases cited above rejected a claim that the jury should have been instructed about the possible penalties. We can understand why defense counsel, particularly in an habitual offender case, might want the jurors to know before they retire that his client faces in excess of thirty years for being a clumsy petty thief or a sloppy petty forger.

In most cases the defendant charged with being an habitual offender will avail himself of the bifurcated proceeding afforded by Ind.Code § 35–50–2–8. That statute and our holding in *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830 insure that the habitual offender charge and the matters relevant thereto will not be mentioned to the jurors unless and until the defendant may have accumulated the third prior felony conviction. In this case the Prosecutor's lecture subtly raised the issue of the jurors' feelings toward the habitual offender statute by inquiring about their attitudes toward the severity of penalties. The Prosecutor's intent was unmistakable. He mentioned the definition of a felony along with the concept of a prior unrelated felony conviction:

> "Now, the Court may suspend any part of a sentence for this offense, unless the person has a prior, unrelated felony conviction. Okay, now what does that mean, that prior, unrelated felony conviction. A felony in Indiana is defined as any criminal offense, but first let me go back and is there anybody that is either seated in the jury box at this moment, or in the audience section that believes that range of penalty, which is essentially from 2 to 8 years, and then up to a $10,000.00 fine is in any way inadequate, let's say not enough time? Or too much time, knowing that the minimum penalty is two years?" (R. at 253–54).

These questions succeeded. One juror thought that 8 years was not long enough; another thought that two years was too harsh; and yet another wanted to hear the evidence before he could decide. The Prosecutor also provided a hypothetical, which we have quoted at length above, in which a defendant had prior convictions for simple assault and theft. The story contains a veiled analogy to the habitual offender statute by way of mentioning the trial court's lack of power to suspend a sentence where the defendant has prior unrelated felony convictions. Yet another veiled reference to the habitual offender statute occurred in this exchange with a juror:

> "JUROR: The jury never can make recommendations?
>
> "MR. WALKER: Well, I guess a jury could, but if the Court—number one it might be a little bit dangerous, and we are not talking about a capital punishment case, but certainly a juror could make a recommendation as to sentence just to the Judge, just as I suppose any other individual could. It would be exclusively up to the Judge's discretion whether or not he paid any heed to that recommendation. Does that make sense?
> "JUROR: Yes.
> "MR. WALKER: Okay, how do you feel about it now?
> "JUROR: Well it is a simple case of he either did it or he didn't do it.
> "MR. WALKER: As far as you are concerned that is it. *Because you will receive an instruction as to penalty.* Does that give you any problem?
> "JUROR: No." (R. at 262, emphasis added).

And the intent is again evidenced in this exchange with a juror:

> "Now, with respect to my comments concerning penalty and non-suspendibility, do you believe that it is fair, just, and reasonable, that if a defendant has committed a felony, been sentenced for it, got probation or went to jail, and subsequently commits another felony, he doesn't get a second bite at probation? Do you think that is fair, it makes sense? He gets one bite at the apple so to speak. Do any of you have any quarrel with that?
> "JUROR: He had one chance.

"MR. WALKER: That's right. He's committed one felony, been convicted, been sentenced, and after being sentenced commits another one, non-suspendible on the second time around, and he gets that whole range, but it is not suspended. Any quarrel with that?

"Okay, now, do you believe and I would submit to you, and this man in the back said it pretty well, or summed it up pretty well when he ask the question—when he summed it really with a question, we've got to only determine whether he did it or didn't do it. That's all, so I would also submit to you that you've got to really cast out of the decision making process and separate from your decision making process any consideration as to the penalty that defendant might get if you convicted him. Do you agree with that? You can't consider that and if you do you are letting either sympathy or prejudice control the decision making or cloud your minds as to whether or not the defendant did what we've got him charged with doing. Is that a fair proposition?

"JUROR: Yes." (R. at 266–67).

The blame for the introduction of the penalty and its related concepts into the jurors' consideration of this case lies with the Prosecutor and the trial court. Despite Defendant's timely and continuing objection, the trial court took no steps to prevent the Prosecutor from improperly instructing the jury about matters that the law entrusts to the trial court. The trial court's inaction allowed the State to cultivate bias about penalties in its favor in the voir dire when it could not cultivate that same bias in tendered instructions. As the case law precludes the defendant from attempting to sway the jury in his favor with explanations about the possible punishments, so it also precludes the State. Because of the potential for the State's improper voir dire to prejudice the defense and the trial court's failure to take corrective measures, Defendant is entitled to a new trial. *Dailey v. State*, (1980) Ind., 406 N.E.2d 1172, 1173–75.

The judgment of the trial court is reversed and the case is remanded for a new trial.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.