**Howard J. HOSSMAN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4-684A155.**

Court of Appeals of Indiana, Fourth District.

Feb. 12, 1985.

⚖633(1)

Larry A. Landis, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant-Appellant Howard J. Hossman (Hossman) appeals his jury conviction for theft, receiving stolen property, a class D felony, IND.CODE 35–43–4–2(b).

We reverse and remand for a new trial.

ISSUE

Since we reverse, we address only the following issues:

Did the prosecutor's comments constitute misconduct so as to deprive Hossman of a fair trial?

## FACTS

Hossman was tried for burglary, conspiracy to commit burglary, and theft, receiving stolen property, all of which stemmed from one incident. A hung jury resulted from the burglary and conspiracy to commit burglary charges but Hossman was convicted of theft, receiving stolen property and sentenced to two years in prison. This sentence is to run consecutively to a previous sentence Hossman was serving at the time of trial.

## DISCUSSION AND DECISION

Hossman contends the cumulative impact of the prosecutor's comments at trial denied him a constitutionally-guaranteed fair trial. We agree.

Our Supreme Court recently reiterated the criteria we are to consider when reviewing claims of prosecutorial misconduct. It said:

... The following factors are to be considered when reviewing a charge of prosecutorial misconduct:

1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. See *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193.

2. The Court then considers whether the misconduct, under all the circumstances, "placed [the defendant] in a position of grave peril to which he should not have been subjected." *White v. State*, (1971) 257 Ind. 64, 78, 272 N.E.2d 312, 320, followed in *Warner v. State*, (1976) 265 Ind. 262, 354 N.E.2d 178, 54 Ind.Dec. 481; *Rufer v. State*, (1976) 264 Ind. 258, 342 N.E.2d 856; *Turczi v. State*, (1973) 261 Ind. 273, 301 N.E.2d 752; *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409. The "grave peril" standard does not require the Court to find that the misconduct determined the outcome of the trial. *White, supra*, at 272 N.E.2d 319–20. This is the same standard which *White* mandates trial courts to observe in ruling on mistrial motions.

3. Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. *Swope v. Swope, supra*.

4. Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result. *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409; *Garrett v. State*, (1974) 157 Ind.App. 426, 300 N.E.2d 696.

*Burris v. State* (1984), Ind., 465 N.E.2d 171, 186–187. *Accord Maldonado v. State* (1976), 265 Ind. 492, 498–499, 355 N.E.2d 843, 848; *Lahrman v. State* (1984) Ind. App., 465 N.E.2d 1162, 1165 (trans. denied).

■ A contemporaneous objection is required to raise a question of proscribed prosecutorial misconduct. *Burris*, 465 N.E.2d at 187; *Maldonado*, 355 N.E.2d at 848.

In this case, prosecutorial misconduct began with opening statements, Hossman claims. In his opening statement, the prosecutor said:

... I'm the perfect person to be trying this case for the reason that I know these people. I've dealt with everyone of these people and I submit to you everybody

MR. LANDIS: Objection Your Honor to the Prosecutor stating his personal knowledge of the witnesses and as far as his belief in their credibility.

MR. VANMIDDLESWORTH: The evidence—I'm not referring to their credibility and the evidence will show the relationship.

THE COURT: If this is a comment on the evidence that will be introduced that's proper.

(Opening Statement by Mr. VanMiddlesworth is continued.) The evidence will show that I've prosecuted everybody that's going to take the stand to testify

to you about this crime, has any direct involvement in this crime. Particularly I've prosecuted Gary Crumpton, I've prosecuted Danny Slinker, I've prosecuted Belinda Goodwin over in Circuit Court. They're not my friends. You'll find out that they're this man's friends and they're burglars and thieves. Also while this is an old case, kind of old, it should have gone to trial June of last year and then again in December of last year. Just recently we received a list of witnesses for the defense. Two of which you know I received today. That list is Bobby Lamb, you've heard these names contemplated defense witnesses, Bobby Lamb, Jim Bumbalow, Max Marty, Patricia Hibbard, Mike Canon, Mickey Meyers. Courtroom regulars, all of them I've known and many of whom I've seen as—

> MR. LANDIS: Objection Your Honor to the Prosecutor continuing stating his personal knowledge.
>
> THE COURT: I'll sustain that objection. I'll sustain the objection.
>
> MR. VANMIDDLESWORTH: I'll restate that. Many of whom you'll find have been witnesses prior in Circuit Court.
>
> MR. LANDIS: Objection to that statement also Your Honor, that will not be admitted into evidence.
>
> THE COURT: I'll overrule that objection. (R. 279–280)

In the first instance, Hossman argues, the fact the prosecutor personally dealt with three of the witnesses he named in opening statement was irrelevant to the case, and thus in violation of the Code of Professional Responsibility. He further points out the prosecution had subpoenaed all his defense witnesses prior to opening statement, and they in fact testified for the State in its case-in-chief. Hossman claims this tactic also violated the code above-mentioned.

The Indiana Code of Professional Responsibility, Disciplinary Rule DR 7–106 reads, in part:

> (C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
> (1) State or allude to any matter that he had no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

> . . . . .

Thus Hossman's first assertion is correct. It is irrelevant that he had previously, "dealt with every one of these people", and prosecuted them in Circuit Court, and knew them to be "courtroom regulars." None of this was relevant to the case to be tried.

 While the State's subpoenaing of all defense witnesses was an unusual tactic, this trial strategy is not objectionable, and thus not a violation of the Code for that reason alone. However, the prosecutor's comments these witnesses were "burglars and thieves", "courtroom regulars", and they "had been witnesses prior in Circuit Court" violate DR 7–106(C)(1) for another reason. By subpoenaing these defense witnesses they became the State's own witnesses. It is axiomatic one may not impeach his own witness without first demonstrating the witness's hostility. *Ward v. State* (1982), Ind., 438 N.E.2d 966, 967; *Love v. State* (1977), 266 Ind. 577, 365 N.E.2d 771. The prosecutor could not know during his opening statement the witnesses he intended to call would be hostile. It is only where a party shows necessity to call a witness or such witness's hostility the calling party may impeach such witness or interrogate him by leading questions. Ind.Rules of Civil Procedure, Trial Rule 43(B). While it is true prior convictions for burglary and robbery may be shown for impeachment purposes, *Roseberry v. State* (1980), 273 Ind. 179, 402 N.E.2d 1248, a party may not impeach his own witness by evidence of bad character

> ... unless it was indispensible that the party should produce him, or in case of manifest surprise, when the party shall have this right; ...

IND.CODE 34–1–14–15, and see *Crafton v. State* (1983), Ind.App., 450 N.E.2d 1042, 1050. Because the prosecutor could not

reasonably anticipate hostility of those he had made his witnesses, did not allege they were indispensible to his case, nor could not anticipate he would be manifestly surprised by their testimony, evidence as to these witnesses' prior criminal convictions was inadmissible and his statements alluding thereto made reference to inadmissible evidence, a further violation of DR 7–106(C)(1). Nor did such evidence ever become technically admissible, although it went in without objection from Hossman. Our review of these witnesses' testimony reveals three facts: (a) none testified adversely to the State's position, (b) the prosecutor made no motion to examine any of these witnesses as unwilling or hostile witnesses, and (c) the State in fact granted use immunity to each of them. Thus, the State never reached the stage where it could impeach its own witnesses since no hostility or unwillingness on their part was ever shown. Further, the grant of immunity tended to make them willing, not hostile witnesses. Finally, neither indispensibility nor manifest surprise was ever shown during the course of their testimony.

■ In sum, the prosecutor's comments during opening statement as to his personal dealings with the witnesses and that they were "burglars and thieves", "courtroom regulars", and they "have been witnesses prior in Circuit Court" were totally irrelevant because such comments referred to inadmissible evidence and the prosecutor's personal dealings with them. Thus, his comments were in violation of DR 7–106(C)(1). Unless a reasonable basis exists for the prosecutor to believe evidence will be admissible, he may not comment thereon or allude thereto during a trial. *Bagnell v. State* (1980), Ind.App., 413 N.E.2d 1072, 1076–1077, n. 4.

Also, these opening statement comments violated DR 7–106(c)(4). That rule prohibits a prosecutor from asserting a personal opinion of a witness's credibility which suggests personal knowledge of facts not before the jury. *Strickland v. State* (1977), 265 Ind. 664, 672, 359 N.E.2d 244, 250; *Merritte v. State* (1982), Ind., 438 N.E.2d 754, 757; *Johnson v. State* (1983), Ind.

App., 453 N.E.2d 365, 368–369. This rule guards against the danger "the jury will infer that the prosecutor bases his belief on inside knowledge of the case and will accept his remark as having evidentiary value." *Craig v. State* (1977), 267 Ind. 359, 367, 370 N.E.2d 880, 884. Clearly, the prosecutor's opening statement was riddled with proscribed personal opinion.

Viewing the opening statement as a whole, however, these opening statement comments alone did not prejudice Hossman's case at that stage of the trial, *see, Buise v. State* (1972), 258 Ind. 321, 324, 281 N.E.2d 93, 96, because they did not place him in a position of "grave peril", *Maldonado*, 265 Ind. at 501, 355 N.E.2d at 849, even though the prosecutor's opening statement was not "a model of professional decorum." *Morris v. State* (1980), 272 Ind. 452, 456, 398 N.E.2d 1284, 1287. However, these comments established a prosecution theme which was pursued throughout the trial, namely, Hossman's defense was fabricated.

■ Hossman next complains of the prosecutor's volunteered statement made in the presence of the jury just prior to a recess. When the court announced its intention to recess, the prosecutor said

Your honor may I make a request? I would like to proceed with these witnesses before anyone has an opportunity to talk with them—get them while they're fresh. (R. 297)

The record does not show Hossman's counsel objected to this remark, but does show the trial court immediately recessed after the statement was made, apparently without giving defense counsel the opportunity either to object or to request the remark be stricken and the jury admonished. While a contemporaneous objection is required as a condition of appellate review, *Burris*, 465 N.E.2d at 187; *Maldonado*, 355 N.E.2d at 848, failure to object does not waive an issue on appeal if the trial court does not afford the aggrieved party an opportunity to object. *Long v. State* (1983), Ind.App., 448 N.E.2d 1103, 1104–1105; Ind.Rules of

Procedure, T.R. 46. Again, nothing appears in the record to justify this comment. No evidence to that point indicated defendant Hossman would attempt to pursuade these witnesses to testify falsely, or had ever done so in the past. Thus, DR 7–106(C)(1) was again violated.

■ Hossman next argues the prosecution threw an "evidential harpoon", citing the following excerpt from witness Lamb's redirect examination:

Q. Have you had communications with the defendant in the past month?
A. Yes sir.
Q. Have you received letters from him?
A. No, sir.
Q. Have you written letters to him?
A. No sir.
Q. Have you talked to him?
A. Yes sir.
Q. When did you talk to him?
A. I went to the prison to see him a couple of weeks ago with another friend. (R. 320–321)

These questions were asked at the beginning of Lamb's redirect examination. After the trial court sustained Hossman's objection at the bench, the prosecution immediately dismissed Lamb from further testimony, and he was not later recalled. However, the prosecutor's question "[w]hen did you talk to him?" did not solicit the place of conversation, it asked for the time of the conversation. The witness merely volunteered Hossman was in prison. Thus, we cannot say the prosecutor deliberately threw an "evidential harpoon" requiring reversal. *See White v. State* (1971), 257 Ind. 64, 71, 272 N.E.2d 312, 316 *quoting Wright v. State* (1958), Okla.Ct.App., 325 P.2d 1089, 1093.

■ Further, the trial court polled the jury as to its prejudice because of this volunteered information, and admonished them to disregard such testimony when Hossman moved for a mistrial. Generally, an admonition and other curative measures are presumed to cure any errors in the admission of evidence. Likewise, the jury is presumed to obey the trial court's admo-

nition. *Scott v. State* (1982), Ind., 434 N.E.2d 86, 89; *Collins v. State* (1981), Ind. App., 422 N.E.2d 1250, 1252.

The prosecutor, however, closed the circle on his "fabricated defense" theme during final argument. In the process, he placed Hossman in a position of "grave peril." Riding rough-shod over the court's repeated rulings not to make such argument, the prosecutor said

The State elected not to start with its own witnesses and of course the State called a number of people who were intended to be defense witnesses and that was a decision you probably if you sat in a courtroom for a hundred years you wouldn't see that done. That decision was made for a certain reason. The State called those people—

MR. LANDIS: Objection Your Honor as to the Prosecutor's decision making strategies.

THE COURT: Sustained. You must confine yourself to the evidence uh— and those witnesses were called to see what they knew and their testimony was poored (sic) in concrete before the State even started with its witnesses ... (R. 672–673)

Next, nowhere in the evidence is there a suggestion by witness Goodwin she lied at Hossman's counsel's request. Nevertheless, the prosecutor continued:

I'll tell you one of the most amazing things that any jury will ever see in a courtroom transpired when Mr. Landis wanted to show you what (sic) she is a perjurer and it became evidence in this trial and I can talk about it now. You know how he showed you she was a perjurer because he showed you that on a prior occasion in Circuit Court when he represented this man he called her as a witness and she committed perjury for him in defense of this man and that's absolutely astonishing and the gates of hell should have been thrown open when Mr. Landis would stand up and admit to you and let you know yes I've called a witness my names (sic) in here you know who was there. I've called her and I've

used her and she's committed perjury for me.

MR. LANDIS: Objection Your Honor that's obviously not the testimony.

THE COURT: Sustained, I'm sorry there is no testimony that that woman lied at the request of Mr. Landis now I'll—

MR. VANMIDDLESWORTH: I'll rephrase that Your Honor.

THE COURT: Alright.

I'm not going to make Mr. Landis a conspirator of perjury or of supporting perjury by the fact was clear in an inadvertance (sic), for lack of preparation or whatever I had to sit over there and listen to a witness came in in defense of that man called Mr. Landis and commit perjury in another case. (R. 679–680)

Then, heedless of the consequences, the prosecutor effectively torpedoed whatever chance Hossman had left of obtaining a fair trial by saying:

I had made a decision in this trial I was going to call their witnesses before the State's evidence was put on. Before they got their acts together, before they had an opportunity to create stories so I wouldn't have to listen to perjury again. (R. 680)

 Viewing this trial as a whole, as we are required to do under *Burris's* fourth requirement, the prosecution's relentless pursuit of its "fabricated defense" theme capped by this final argument comment without question put Hossman in a position of "grave peril." Even had Hossman not objected to these final argument remarks, we would review them as fundamental error and reverse. *See Blackmon v. State* (1983), Ind., 455 N.E.2d 586, 590; *Ingram v. State* (1984), Ind.App., 463 N.E.2d 483, 485, *also see Dooley v. State* (1979) 271 Ind. 404, 408, 393 N.E.2d 154, 156, where a prosecutor by inference points out to a jury the defendant had not testified. While the defendant is not entitled to a perfect trial, he is entitled to a fair trial. *White v. State* (1972), 257 Ind. 64, 77, 272 N.E.2d 312, 319. For the reasons abovestated Hossman did not receive one in this case.

Reversed and remanded for a new trial.

MILLER, P.J., and YOUNG, J., concur.