Christopher BANNOWSKY, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 42A04–9411–CR–470.

Court of Appeals of Indiana.

Nov. 30, 1995.

Rehearing Denied Feb. 2, 1996.

Transfer Granted April 17, 1996.

Jessie A. Cook, Hellmann & Cook, Terre Haute, for Appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Christopher Bannowsky appeals from his conviction for child molesting as a class B felony.[1] We affirm.

1. Ind.Code 35–42–4–3(a).

*ISSUES*

1. Whether admission of the victim's prior consistent statement was reversible error.
2. Whether Bannowsky was denied effective assistance of counsel.

*FACTS*

Christopher Bannowsky, his wife Sherri, their daughter, B., and B.'s two younger siblings moved into a three bedroom apartment in Vincennes in the summer of 1992. In the fall, Sherri began work as a nurse's aide. When Sherri worked, Bannowsky stayed home with the children and studied for the commercial driving license examination.

One night that winter, then six year-old B. and her father were in the living room. Her mother and siblings were in bed. Bannowsky, wearing shorts, lay on the couch. Bannowsky ejaculated "into [B.'s] mouth" and "on [B.'s] nightgown." (R. 326). The semen was "white" and tasted "nasty." (R. 326). B. drew a picture showing Bannowsky's penis, dots depicting semen, and a stick figure of herself with an X for her mouth—where Bannowsky's penis had been.

On June 18, 1993, Bannowsky was charged with child molesting, a class B felony. At trial, the State presented without objection a transcript of a statement given on March 23, 1993, by B. to Cathy Jones of the county welfare department and Detective Faulkner of the Vincennes Police Department. The jury found Bannowsky guilty.

*DECISION*

1. *Admission of Transcribed Statement*

    Bannowsky claims the admission of B.'s prior consistent statement was erroneous because it met none of the requirements for admissibility under *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, and further claims the admission constitutes reversible error.

In *Modesitt,* our supreme court adopted Federal Rule of Evidence 801(d)(1)(A) governing the admissibility of prior statements as substantive evidence, holding that:

from this point forward, a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the person.

*Id.* at 653–54.

The State argues that the prior consistent statement is admissible because it responded to "an implied charge of recent fabrication." State's Brief at 7. Bannowsky responds that his defense was not that there was a "recent fabrication" but "that B. fabricated her allegations against him … prior to the time she made her original complaint to the police and prior to giving the statement whose introduction the State seeks to justify." Bannowsky's Reply at 2. Our reading of the record supports Bannowsky's contention. Thus, the statement was not admissible under the second "recent fabrication" prong of *Modesitt.* We agree with Bannowsky that the statement was not admissible under *Modesitt.*

However, as the State initially points out, "B.'s statement to police was admitted without objection." State's Brief at 6. More specifically, we note that the admission followed the court's having expressly asked defense counsel, "Do you have any objection, Mrs. Madison?" to which she replied, "I have no objection, your Honor." (R. 362). Thus, the State argues, by failing to object to the admission of the statement, Bannowsky did not preserve the error, citing *Jenkins v. State* (1993), Ind., 627 N.E.2d 789, 797, *cert. denied,* —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21 and the issue is waived. We agree.

*Modesitt*'s reversal ensued because the trial court "allowed, over objection" the inadmissible testimony. 578 N.E.2d at 654. Bannowsky urges in his reply brief that ac-

cording to *Craig v. State* (1994), Ind., 630 N.E.2d 207, 209, admission of such a statement warrants remedial action on appeal. However, as in *Modesitt,* the *Craig* reversal followed the erroneous admission of hearsay testimony when there had been a timely hearsay objection at trial.

None of the authority cited by Bannowsky on his fundamental error issue requires we find the admission of B.'s prior statement to constitute reversible error where there had been no objection at trial. *Matter of J.L.* (1992), Ind.App., 599 N.E.2d 208, 211 ("J.L. objected to the statements as hearsay."); *Harris v. State* (1993), Ind., 619 N.E.2d 577 ("We disagree with appellant's conclusion that the facts presented give rise to a valid claim of fundamental error."); *Biberstine v. State* (1994), Ind.App., 632 N.E.2d 377, 379 ("Biberstine acknowledges that he did not object at trial to the admission...." Biberstine's fundamental error claim fails.)

Finally, we observe that Bannowsky's trial strategy was to convince the jury that B.'s account of what happened that night was simply not true. To that end, his counsel's opening statement suggested that both B.'s mother and father would be testifying about "some problems B. has." (R. 307). In responding to an objection about having exceeded the scope of direct examination in her questioning of B., defense counsel said she needed "to get this information out because a lot of it establishes reasons why ... there could have been fabrication." (R. 334). Defense counsel asked B.'s mother her "opinion as to whether she's truthful or untruthful," and the mother answered, "She tends to fabricate stuff." (R. 439). When his counsel asked if he could think of any reason why B. would have made this up, Bannowsky answered, "yes. She was on restriction. I had grounded her from ... her birthday." (R. 482). In her closing statement, defense counsel frequently directed the jury's attention to the prior statement, suggesting certain passages indicated equivocation on B.'s part. Counsel said, "I'd like you to look at that [the prior statement] real closely," (R. 529), and suggested "the way that she was questioned was designed to elicit" certain answers. (R. 530). She actually read from

the transcribed statement, and noted some things that did "not make sense" and "are, generally, unreasonable." (R. 534). Given what Bannowsky characterizes as B.'s "halting and equivocal in-court testimony," Bannowsky's counsel drew attention to various portions of her prior statement to support his defense that B. fabricated her account of the molestation incident, to impeach B.'s credibility. We decline to give Bannowsky two bites of the apple: to first allow him to use B.'s prior statement to bolster his defense, and then—when the defense is not successful—to challenge as fundamentally erroneous the admission of the unobjected to evidence.

### 2. *Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is reviewed in two steps: first, we focus on trial counsel's performance to determine its actual reasonableness, bearing in mind the presumption that counsel rendered effective assistance; second is a "review for the purpose of determining if the client was prejudiced by trial counsel's unreasonable acts" because the "client must show that but for counsel's unprofessional errors the result of the proceeding would have been different." *Walker v. State* (1993), Ind., 607 N.E.2d 391, 395, *reh'g. denied* (citing *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291). To prevail on appeal requires Bannowsky to "demonstrate both that counsel's performance fell below that of prevailing professional norms and that the result of the proceeding would have been different but for counsel's deficiencies." *Kutscheid v. State* (1993), Ind., 592 N.E.2d 1235, 1238. "Proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit." *Id.* at 1239.

Bannowsky first claims his counsel was ineffective for having failed to object to the admission of B.'s prior statement. Because B.'s statement was not admissible under *Modesitt,* he contends, counsel's objection to its admission would have been sustained, and "once such a showing has been made, a reviewing Court will find that counsel's failure to object to the admission of otherwise inadmissible evidence constitutes ineffective assistance of counsel." Bannow-

sky's Brief at 28, citing *Garrett v. State* (1992), Ind., 602 N.E.2d 139, 141. We do not find *Garrett* to contain the proposition for which Bannowsky cites it. Bannowsky may be rephrasing our supreme court's statement that "[f]ailure to object to admissible evidence does not constitute ineffective assistance of counsel." However, the direct assertion for which Bannowsky cites *Garrett* is not there found. Another discussion in *Garrett*, not cited by Bannowsky, is directly applicable to the error claimed here—where the action challenged was a matter of strategy by counsel at trial.

> This obviously is a matter of choice of tactics by trial counsel. Counsel was faced with witness Kincaid's inconsistent statements and obviously was attempting to convey to the jury that the information furnished to police by Kincaid could not be deemed truthful. He also had the possibility of establishing doubt in the minds of the jury concerning the truthfulness of Larkins' testimony. Tactical choices by trial counsel do not establish ineffective assistance of counsel even though such choices may be subject to criticism or the choice may ultimately prove detrimental to the defendant.

*Garrett* at 141–142. As described in the first section of this opinion, counsel made a tactical decision to not object to the admission of B.'s statement and then used that statement in an attempt to impeach B.'s credibility. The strategy was not an "unreasonable act" on the part of counsel. *Walker, supra.* A tactical choice which was not an unreasonable act does not establish ineffective assistance of counsel.

Bannowsky also refers us to *Morris v. State* (1994), Ind.App., 628 N.E.2d 1256, as a case where trial counsel was found ineffective for failure to object to the admission of statements which did not meet the *Modesitt* standard. After finding certain statements inadmissible under *Modesitt*, showing "that a proper objection to the testimony, if made, would have been sustained," we moved to an analysis of the prejudice to Morris, the sec-

ond step of the ineffective assistance test. *Id.* at 1259. We quoted *Modesitt*'s concerns about lack of the ability of the defendant to cross-examine the witness whose statement was put in evidence. We noted that the victim, M.B., did not testify at trial about Morris' alleged molestation of her.

> Therefore, due to counsel's failure to object to any of the testimony regarding M.B.'s out-of-court allegations, Morris was convicted solely on the basis of M.B.'s out-of-court statements. We therefore find that Morris was denied effective assistance of counsel....

*Id.* at 1260. First, while B. was on the stand, defense counsel had stated that "the bulk of my questioning is going to have to be done on recalling B. in my case." (R. 350). Thus, before the statement was admitted the defense had indicated the intent to recall her to the stand during the defense. Second, because B. did testify, Bannowsky was not convicted solely on the basis of her prior statement. The prejudice requiring reversal in *Morris* is not shown here.

■ Bannowsky next claims his counsel was ineffective for failing to object to the prosecuting attorney's: 1) suggestions to jurors in voir dire that B. had told people, including a counselor, about the incident but that those people would not be allowed to testify; and 2) opening statement remarks about B. having told two little girls, her friends, about the incident. Specifically, Bannowsky complains of "repeated[ ] and impermissibl[e] advis[ing] of prospective jurors" that certain witnesses existed and could testify, but "for some inexplicable reasons" would "not be called to testify." Bannowsky's Brief at 29, 34. Having reviewed the instances of questioning which Bannowsky labels improper, we agree with the State that they show the prosecuting attorney seeking to determine whether potential jurors would hold it against the State if the law did not allow the presentation of hearsay statements made by B. to counsels, teachers, and others.[2] Similarly, the prosecutor asked jurors whether it would bother them if he could not

---

2. For example, "So if you're on the jury and you don't hear all these other people who the child told about this, you're not going to hold that against someone because that's what the law is are you?" (R. 169).

present vouching testimony of a teacher or counselor.[3] We further agree that the questioning incorporated correct statements of the law. *See Arndt v. State* (1994), Ind., 642 N.E.2d 224, 227, (hearsay, an out-of-court statement that is offered into evidence to prove the truth of the facts asserted in the statement, is inadmissible unless if fits within an exception); *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 125 (improper vouching by psychologist of victim's veracity).

■ We apply a two step appellate inquiry to an allegation of prosecutorial misconduct: "1) whether the prosecutor engaged in misconduct, and 2) whether the alleged misconduct placed the defendant in a position of grave peril or evinced a deliberate attempt to improperly prejudice the defendant." *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 120, *reh'g. denied.* "The function of the voir dire is to ascertain whether or not the prospective juror can render a fair and impartial verdict in accordance with the law and the evidence." *McCormick v. State* (1982), Ind., 437 N.E.2d 993, 996 (citing *Blackburn v. State* (1979), 271 Ind. 139, 390 N.E.2d 653, 656). Because the prosecutor's questioning correctly stated the law, there was no prosecutorial misconduct in voir dire questions which attempted to ascertain whether a prospective juror could act in accordance with the law.

Bannowsky's other assertion of prosecutorial misconduct aims at his opening statement, claiming it is "replete with inadmissible and unethical references to facts outside the Record" because no evidence followed concerning B.'s playing with her friends and her "alleged conversation with Brittany Moore."[4] Bannowsky's Brief at 32, 33. Bearing in mind the second step of appellate review for purported prosecutorial misconduct, we are unable to accept Bannowsky's conclusion that the opening remarks subject-

ed him to grave peril. The court's preliminary instruction No. 12 told jurors the attorneys' openings statements "are not evidence;" (R. 303); Bannowsky's counsel said in her opening statement that "these statements aren't evidence;" (R. 306); and the court's final instructions again directed the jury not to consider "statements or comments of counsel on either side" as evidence. (R. 575). We do not find the remarks to constitute prosecutorial misconduct.

Because Bannowsky's claims of prosecutorial misconduct fail, his counsel cannot be found ineffective for failing to object to certain conduct of the prosecutor.

■ Bannowsky's third argument in support of his claim of ineffective assistance of counsel focuses on counsel's failure to challenge the trial court's determination that B. was competent as a witness. As we said in *Hall v. State* (1994), Ind.App., 634 N.E.2d 837, 842,

[w]hether a child is competent to testify is a question of law which lies solely within the discretion of the trial court based upon the judge's observation of the child's demeanor and responses to questions posed to her by counsel and the court. We will not reverse the trial court's determination that a child is competent to testify except for an abuse of discretion. If the record contains evidence from which the trial court could have reasonably inferred the child (1) understood the difference between telling the truth and telling a lie, (2) knew she was under compulsion to tell the truth, and (3) knew what a true statement actually was, the trial court's ruling must be affirmed.

(citations omitted).

■ B. demonstrated that she understood the difference between telling the truth and telling a lie when she stated it would be

---

**3.** One such exchange was as follows:

State: Okay, now what if you ... sitting back in the jury room, one of the jurors say, [sic] well I'll bet if that counselor would have taken the stand they would have told us whether or not they believe this kid or not and that'd make our job easier. It's natural for you to think that isn't it?

Juror: Yes.

State: Okay. You wouldn't hold it against us that we're not allowed to present testimony of that type are you?

(R. 216–17).

**4.** We note that Bannowsky's own counsel asked B. whether she had ever told "Brittany Moore that this same thing happened," and B. answered, "Yes." (R. 339).

a lie for counsel to say he had two noses on his face but if he said he had one nose that would be the truth. She showed she knew she was under compulsion to tell the truth when she said that for her to say she had two noses would mean she was "lying" and that what happens when one lies is that one "gets in trouble." (R. 313). When the court asked whether when asked questions on the stand she was "going to tell the truth or ... tell lies," she answered, "Truth." (R. 313). B. exhibited she knew what a true statement actually was in the following colloquy with defense counsel.

Q: ... if you looked out the window and it looked like it was sunny outside to you and a grown up, maybe someone you like real well, told you that it wasn't sunny outside and I came in and I said, B. is it sunny outside? Which answer would you give me?

A: Yes.

Q: And why would you give me that answer?

A: Because it was.

(R. 314).

Inasmuch as there was evidence from which the court could conclude B. was competent as a matter of law, counsel was not ineffective for failing to object to the court's determination of her competency.

We affirm.

RILEY and BAKER, JJ., concur.