Christopher BANNOWSKY,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 42S04–9604–CR–275.

Supreme Court of Indiana.

March 27, 1997.

Jessie A. Cook, Hellmann & Cook, Terre Haute, for Appellant.

Pamela Carter, Attorney General, Christopher L. LaFuse, Deputy Attorney General, Indianapolis, for Appellee.

On Petition To Transfer

DICKSON, Justice.

The defendant, Christopher Bannowsky, was convicted of Child Molesting as a class B felony. The Court of Appeals affirmed. *Bannowsky v. State*, 658 N.E.2d 919 (Ind.Ct. App.1995). Asserting various claims, the defendant seeks transfer. We grant transfer solely to address the defendant's claim that his constitutional right to counsel was denied due to the ineffective assistance of his trial attorney who failed to object to prosecutorial misconduct during jury selection. The Court of Appeals concluded that there was no prosecutorial misconduct and, therefore, no inef-

fective assistance of counsel for failure to object. We hold that prosecutor's voir dire questions were improper, but that the failure of defense counsel to object does not require reversal.

The defendant asserts that the prosecuting attorney committed misconduct by repeatedly advising prospective jurors "that the complaining witness had related her allegations of molestations to other individuals who would not be permitted to testify." Brief of Appellant at 29. By this technique, argues the defendant, the prosecutor was permitted to convey to the jury information not admissible during the trial. The State defends the voir dire questions, claiming that they "did not involve the facts of the case" but rather "were designed to ensure that a juror would not acquit Defendant if the State declined to present this arguably inadmissible testimony." Brief of Appellee at 10.

Among the examples of improper voir dire questions cited by the defendant are the following:

Q. Okay. Now do you know that [...] what about other witnesses, what about people who the victim told, counselors, teachers, that type of thing, do you think you, as a juror, would like to hear that?

A. Yes.

Q. Okay. Do you think that you, as a juror, are allowed by the law to hear that [...] what if I told you that in most cases you're not, would that bother you?

A. I would just go with what was presented before me.

Record at 168–69. At another point the following colloquy occurred:

Q. Juror Number 8, I want to ask you [...] talked earlier about sometimes in these trial [sic] they want to [...] a jury wants to hear from counselors and even the defense attorney made some reference to whether or not a counselor believed the child. Would you as a jury want to hear that type of thing?

A. Probably so.

Q. Okay, it's only natural to want to hear as much as you possibly can before you make up your mind, right?

A. Yes.

Q. Okay. Would it bother you that the law doesn't allow that type of testimony?

A. I don't know.

. . .

Q. Okay, now what if you [...] sitting back in the jury room, one of the other jurors say, well I'll bet if that counselor would have taken the stand they would have told us whether or not they believe this kid or not and that'd make our job easier. It's natural for you to think that isn't it?

A. Yes.

Record at 215–17. Later during voir dire, the following discussion took place:

Q. What about the fact that [...] I mean all of us know that if somebody claims that they're a victim of a sex crime they're probably gonna have some kind of counseling. You think that's common?

A. Counseling?

Q. Yeah.

A. Yes.

Q. Especially for a little kid?

A. Of course.

Q. Okay. You know that counselor probably won't be allowed to take the stand and tell you anything?

A. Yes.

Record at 256–57.

The proper role of the voir dire examination of prospective jurors was extensively addressed in *Robinson v. State*, 260 Ind. 517, 297 N.E.2d 409 (1973). The prosecutor there questioned prospective jurors by asking them whether they could vote for the death penalty when a father killed his twenty-year old daughter for resisting his sexual advances. Noting that the facts assumed by the question "bore a striking resemblance to the facts of the case at hand," the *Robinson* Court found problematic the fact that there was no evidence presented "from which the jury could have drawn an inference ... beyond a reasonable doubt" that the friction between the defendant and the victim was incest oriented. *Id.* at 519, 520, 297 N.E.2d at 411.

We think such questions were clearly improper, prejudicial and deliberately calcu-

lated to prejudice the fair trial guaranties of the defendant, by conditioning the prospective jurors to receive the impending evidence, not with an open mind and resolution to give the defendant the benefit of reasonable doubt but rather with the seeds of suspicion firmly planted and anxiously awaiting germination.

*Id.* at 520, 297 N.E.2d at 411. These questions would have warranted reversal had the issue been properly raised and presented to the trial court. *Id.* at 522, 297 N.E.2d at 412.

■ A trial judge has discretion to permit voir dire questions formulated to evoke jurors' attitudes relevant to the charged offense which do not suggest prejudicial evidence not adduced at trial. *Phelps v. State,* 266 Ind. 66, 69, 360 N.E.2d 191, 193 (1977), *cert. denied,* 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110. The principles of *Robinson* do not prohibit inquiry into jurors' preconceived notions regarding a line of defense a defendant may intend to use. *Hopkins v. State,* 429 N.E.2d 631, 634–35 (Ind.1981). *See also Bane v. State,* 587 N.E.2d 97, 102 (Ind.1992). Regarding voir dire generally, we have observed:

> The function of voir dire examination is not to educate jurors, but to ascertain whether jurors can render a fair and impartial verdict in accordance with the law and the evidence. Questions which seek to shape a favorable jury by deliberate exposure to the substantive issues in the case are improper. A trial court has broad discretionary power to regulate the form and substance of voir dire. Yet the court has competing concerns during voir dire. It must be mindful that jurors are to be examined to eliminate bias but not to condition them to be receptive to the questioner's position. Conversely, it must afford each party reasonable opportunity to exercise his peremptory challenges intelligently through inquiry.

*Von Almen v. State,* 496 N.E.2d 55, 59 (Ind. 1986) (citations omitted).

■ Applying these principles to the present case, it is clear that the prosecutor's questioning had the effect of informing the prospective jurors regarding matters prejudicial to the defendant, even though such matters could not be presented in evidence. The prosecutor thus intimated that the victim had repeated her story of the crime to numerous responsible care-providers, and further that such witnesses could verify her believability, but that they were not "allowed by the law" to testify regarding such matters. The State thereby presented admittedly inadmissible evidence to the jury in order to bolster the credibility of its principal witness.

As previously noted, the State asserts that "the prosecutor's questions were designed to ensure that a jury would not acquit Defendant if the State declined to present this arguably inadmissible testimony." Brief of Appellee at 10. We decline to presume that the State, by this argument, is asserting the preposterous claim that it should be permitted to avoid acquittal in the event of failure of proof. Rather, we understand the State to be urging that the prosecutor desired to exclude from the jury persons who would be unable to convict absent corroborating testimony from persons other than the victim. However, such a strategy cannot justify exposing prospective jurors to inadmissible evidence.

We find the State's voir dire questions more egregious than the deliberate conditioning of jurors to receive evidence with "seeds of suspicion firmly planted" as condemned in *Robinson,* 260 Ind. at 520, 297 N.E.2d at 411, and more harmful than the "deliberate exposure to the substantive issues" proscribed in *Von Almen,* 496 N.E.2d at 59. Because the voir dire questions clearly suggested facts prejudicial to the defendant and which questions the prosecutor acknowledged were not expected to be presented at trial, we find that such questions were improper. If timely objection had been presented at trial, we fully expect that the trial judge would have sustained the objection.

■ The defendant claims that the failure of his defense counsel to object amounted to the deprivation of his constitutional rights to the effective assistance of counsel. In ineffective assistance of counsel claims, the defendant must show that counsel's performance was deficient, making errors so serious that the counsel was not functioning as the "counsel" guaranteed the defendant by

the Sixth Amendment and that the deficient performance prejudiced the defense, depriving the defendant of a fair trial, a trial whose result is unreliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Lawrence v. State,* 464 N.E.2d 1291, 1294 (Ind.1984) (applying the *Strickland* test in Indiana). The defendant has the burden of proving both elements of the claim in order to obtain a reversal. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Counsel is afforded much discretion in choosing trial tactics. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■ There are various proper reasons why a defense attorney may have chosen to avoid objecting to the prosecutors improper voir dire questions. The most obvious of these is the desire to avoid focusing the jurors' attention upon the prosecutor's questions. In addition, defense counsel, upon assessing the surrounding circumstances and the prospective jurors present, may have preferred to be perceived as cooperative and helpful, rather than as a contentious obstructionist. Upon our review of the particular circumstances presented in this case, we perceive that the failure to object is consistent with a reasonable choice of defense tactics and strategy. The record does not establish that the defendant's trial attorney failed to function as the counsel guaranteed by the federal and state constitutions.

As to all other issues, we summarily affirm the Court of Appeals pursuant to Ind. Appellate Rule 11(B)(3). The conviction and judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.