Robert Louis JOHNSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–9012–CR–794.

Supreme Court of Indiana.

Nov. 7, 1991.

Charles E. Stewart, Jr., Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Indiana Atty. Gen. and Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Appellant Johnson was convicted by a jury on charges of criminal deviate conduct and robbery. The jury also found Johnson to be an habitual offender. He was sentenced to imprisonment for 35 years, enhanced by 30 years for being an habitual offender, for a total term of 65 years. He raises three issues for our review in this direct appeal:

(1) Whether there was sufficient evidence to sustain his convictions;

(2) Whether a sufficient chain of custody was established to permit the admission of a rape kit into evidence and to allow testimony by a serologist regarding that evidence; and

(3) Whether the trial court properly permitted the State to add a witness after the trial had started.

The facts presented during trial and most favorable to this judgment follow.

Late in the evening of January 7th, the victim, who was a retarded adult male, Bridgette Stewart, and the defendant Johnson's brother met at a lounge in East Chicago. Johnson was also in the lounge that evening. Stewart testified that during the course of the evening, Johnson danced with her and informed her of his intentions to harm the victim. Later the victim walked Stewart to her home several blocks away. Stewart testified that she left the victim there, entered her home, sat in a chair and quickly fell asleep. As the victim was leaving Stewart's home, he noticed Johnson riding his (the victim's) bicycle. The victim began to follow the defendant, who led the victim into the alley behind Stewart's home, threatened to kill him if he did not comply with Johnson's demands. The victim was forced to perform fellatio on Johnson and to submit to anal intercourse. At the conclusion of this attack, Johnson then demanded the two dollars that the victim had in his wallet and left.

Stewart testified that some time after having fallen asleep, she was awakened by pounding at her door. Upon answering the door, she found the victim wearing no pants and crying. He informed Stewart that he had been raped by Johnson. Police were summoned and the victim was examined at a local hospital.

### I. Sufficiency of the Evidence

In alleging that the evidence is insufficient to sustain his convictions, Johnson points to numerous discrepancies in the testimony given at trial, particularly the testimony given by the victim himself. In particular, Johnson notes that the victim testified that he went to the lounge with Johnson's brother and that Stewart met them there. Stewart testified, however, that she, Madden and the victim went to the lounge together. The victim also testified that Johnson forced him to perform oral sex for over an hour and to submit to anal sex for approximately an hour. Finally, Johnson attacks the credibility of the victim by noting that, although the victim testified that he was unable to see a knife in the darkness, he was able to identify Johnson.

It is the province of the jury to hear the testimony given by the witnesses and assess the truth and veracity of each witness. The jury's resulting decision will be overturned by a reviewing court only when such decision is based on testimony that is inherently improbable. *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090. Such is not the case here.

The discrepancies in the evidence do not lead to the singular conclusion that the evidence given was inherently improbable and, thus, insufficient to sustain the conviction. After hearing the testimony and considering the mental capacity of the victim, the jury reasonably could have concluded that the discrepancies in the testimony were inconsequential. The jury similarly could have disregarded testimony with respect to the length of time involved in the attack after the prosecutor helped the victim clarify his testimony by noting that he had no watch, that the attack seemed to last a long time, and by concluding that any victim of a sexual attack is likely to be unable to give accurate lengths of time to the events of the attack. Finally, the jury may reasonably have inferred that, although the victim testified he could not see Johnson during the attack due to darkness, his identification of Johnson as his attacker was believable because he knew Johnson and had visited his home on several occasions. Immediately prior to the attack the victim had seen Johnson riding his bicycle into the alley in which the attack occurred.

In summary, there was sufficient evidence to allow the jury to conclude that Johnson was, in fact, the person who attacked and robbed the victim. We will not re-weigh the evidence and second-guess the jury's determination.

### II. Chain of Custody

Johnson also alleges error based on the fact that the State failed to establish a sufficient chain of custody of physical evidence contained in a rape kit. The requirement that a chain of custody be proven by a party submitting physical evidence at trial is an attempt to satisfy the goal of assuring the trial court that the evidence submitted has not been substituted or tam-

pered with. "While the State is not required to exclude every possibility of tampering, the chain of custody must give reasonable assurances that the property passed through the hands of the parties in an undisturbed condition." *Brafford v. State* (1987), Ind., 516 N.E.2d 45, 50.

The physical evidence in question in this case involves physical specimens contained in a rape kit compiled at the hospital immediately following the attack. The treating physician at the hospital testified that he prepared the standard rape kit, including oral and rectal swabs and slide smears. A nurse on duty that evening testified that she customarily took rape kits from the physician, sealed them, placed her signature on them, and gave them to police. An officer testified that he took the kit from the hospital and locked it in an evidence locker. Another officer testified that he took the kit from the evidence locker and transported it to the Indiana State Police Laboratory where the kit was analyzed, retrieved from the Lab by the same officer, and returned to the evidence locker. A forensic serologist testified that she took the kit from the locked evidence vault in the lab, analyzed the physical specimens in the kit, resealed it and returned it to the vault. Each witness testified that State Exhibit No. 6 was the rape kit that passed through their hands.

Johnson's challenges to the chain of custody established in this case include the fact that the treating physician did not know what was in the rape kit during his testimony and did not identify the rape kit during his testimony, as well as the fact that he could not testify as to what the nurse did with the rape kit after he was finished. In rejecting this argument, we refer Johnson to a previous opinion of this Court, where we said:

> Concerning the physician's testimony as to his connection with the contents of the kit, the record does not support the defendant's claim because the physician testified that in the course of his examination of L.W., the rape kit identified in court as Exhibit A was put together in the emergency room. Regarding the absence of testimony by the physician as to the contents of the kit, we do not see in what way this affects the chain of custody claim. As to the point that there was no testimony from the examining physician concerning how he recognized State's Exhibit A, again we do not see in what way this affects the chain of custody claim.

*Arnold v. State* (1982), Ind., 436 N.E.2d 288 at 291.

■ Johnson also challenges the sufficiency of the chain of custody by attacking the link formed by the attending nurse's testimony. He argues that Nurse Padzik's link was not proven because she testified that she had no independent recollection of the events. Instead, however, Nurse Padzik identified her signature on the rape kit and testified to the custom and practice utilized by her in taking a rape kit from the physician and forwarding it to the police. This evidence clearly was sufficient to provide the "reasonable assurance" required by *Brafford.*

Each link in the chain of custody was proven and, therefore, the trial court properly admitted the rape kit into evidence.

### III. *Amended Witness List*

■ As his final error, Johnson charges that the trial court improperly allowed the State to amend its witness list during the course of trial to admit the testimony of Nurse Padzik. Even after issuing a pre-trial order, it is within the trial court's discretion to allow or deny additions to the witness list. *Johnson v. State* (1983), Ind., 446 N.E.2d 1307. Such decision should be based upon whether allowing such additions would prejudice the opposing party. In this case, Johnson was not prejudiced. Nurse Padzik's testimony was admitted only for the purpose of establishing the chain of custody of the rape kit. Her signature was present on the kit, although it was undecipherable. Upon granting the State's request to allow Nurse Padzik as a witness, the trial court offered Johnson the opportunity to speak with the witness and called an immediate recess. Thus, any possible prejudice was cured by allowing Johnson the opportunity to inter-

view the witness prior to cross-examining her on the stand. Permitting Nurse Padzik to testify was not an abuse of discretion.

The conviction is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.