**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH A. LAINHART, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 24A04-1105-CR-299 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable J. Steven Cox, Judge
Cause No. 24C01-1008-FB-46

**June 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Kenneth Lainhart appeals his convictions and sentence for conspiracy to manufacture methamphetamine as a class B felony[1] and manufacturing methamphetamine as a class B felony.[2] Lainhart raises five issues which we revise and restate as:

I. Whether Lainhart's convictions violate the prohibition against double jeopardy;

II. Whether the trial court abused its discretion and committed fundamental error by admitting evidence of Lainhart's uncharged misconduct;

III. Whether the State failed to establish a proper chain of custody for certain evidence;

IV. Whether the evidence presented was sufficient to support Lainhart's convictions; and

V. Whether Lainhart's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.[3]

---

[1] Ind. Code § 35-48-4-1.1 (Supp. 2006); Ind. Code § 35-41-5-2 (2004).

[2] Ind. Code § 35-48-4-1.1 (Supp. 2006).

[3] The State raises the issue on cross-appeal of whether the court erred in concluding that Lainhart's offenses constituted a single episode of criminal conduct under Ind. Code § 35-50-1-2(c)(2). However, we note that the State at sentencing recommended "that this sentence be capped at thirty years pursuant to the consecutive sentencing statute to treat this as one episode of criminal conduct." May 4, 2011 Sentencing Transcript at 3. The State reiterated its position that Lainhart's convictions constituted a single episode of criminal conduct at the May 18, 2011 sentencing hearing, stating:

> [M]y sentencing recommendation today is maximum consecutive sentences on all three Counts up to thirty years based on the consecutive statute that says that a single episode of criminal conduct can't be sentenced about [sic] the advisory for the next highest offence [sic]. And that would be consistent with your finding in FB-58 that says all the evidence was found pursuant to one, uh, execution and one search warrant than [sic] it's going to be considered one single episode.

May 18 Sentencing Transcript at 5. Accordingly, we conclude that the State has waived its argument on cross-appeal. Cf. Masterson v. State, 843 N.E.2d 1001, 1004 n.1 (Ind. Ct. App. 2006) (noting that standing was not an issue on appeal because the State conceded below that the defendant had established

2

The relevant facts follow. On April 17, 2010, Lainhart encountered Kenneth Marshall, whom he had known for around twenty years, at a store in Everton, and Lainhart asked Marshall if he "wanted to ride to town with him," and Marshall agreed. Transcript at 167. Lainhart took Marshall to the Kroger in Connersville where Marshall purchased pseudoephedrine for Lainhart using Lainhart's money. Marshall understood that the pseudoephedrine was to be used by Lainhart in the manufacture of methamphetamine. The men next went to Auto Zone where Lainhart purchased ether. Lainhart then took Marshall back to the Everton store where he told Marshall that Marshall could later come by Lainhart's house located on Laurel Road in Franklin, Indiana. Marshall complied, and once there the two men and a woman named Bonnie Scarette manufactured methamphetamine on Lainhart's driveway. Another woman named Peggy Beeson[4] showed up later in the evening. Marshall received a quarter gram of methamphetamine from Lainhart from the batch.

On June 11, 2010, Indiana State Trooper Jeremy Franklin, assigned to the meth suppression section, was contacted by Marshall, and Marshall gave Trooper Franklin information about the methamphetamine production in which he had been involved. Based upon this conversation, Trooper Franklin conducted pseudoephedrine log checks at local pharmacies and confirmed that on April 17, 2010, at around 5:30 p.m., Marshall purchased 2.4 grams of pseudoephedrine at the Kroger Pharmacy in Connersville.

---

standing), trans. denied.

[4] Although the transcript spells Beeson's name as "Beason," the charging information and pseudoephedrine logs admitted into evidence indicate that her name is spelled "Beeson." State's Exhibit 6-7.

3

Trooper Franklin also verified, based upon his conversation with Marshall, that ether was sold from the Auto Zone in Connersville on that same date at 5:47 p.m. by cash purchase.

Also based upon the information provided by Marshall, Trooper Franklin checked the pseudoephedrine logs at various pharmacies for the names of Lainhart and Peggy Beeson. The logs indicated that Lainhart purchased pseudoephedrine at the Kroger Pharmacy in Connersville on April 5, 2010, April 13, 2010, and June 7, 2010, at the CVS Pharmacy in Connersville on May 30, 2010, and at the Wal-Mart in Connersville on April 26, 2010, May 9, 2010, and June 9, 2010. In each instance, the logs indicated that Lainhart's address was 18022 Laurel Road, Connersville IN, 47331 (the "Laurel Road property"). The logs also indicated that Beeson purchased pseudoephedrine at Wal-Mart on May 9, 2010, at the CVS Pharmacy in Brookville on May 20, 2010, and at the Kroger in Connersville on June 2, 2010.

Trooper Franklin applied for a search warrant of the Laurel Road property listed by Lainhart in the logs. On June 15, 2010, Trooper Franklin led a team to execute the search warrant and encountered Beeson on the premises upon execution. Trooper Franklin began the search in the kitchen and discovered a coffee grinder with a powdery substance in it. Trooper Franklin also found two packages of unused coffee filters, a canister of salt, alcohol, a large commercial funnel, glue sticks, a container of lye or sodium hydroxide, a bottle of sulfuric acid, a large green thermos, a black plastic and metal strainer, and thirteen glass jars, all of which are used in the production of methamphetamine. He also discovered six "soiled and twisted" coffee filters which he sent to the lab for analysis. Id. at 134. In addition to the evidence of methamphetamine production, Trooper Franklin found an empty package containing hypodermic needles

4

and three used hypodermic syringes, as well as razor blades and "a whole bunch of portions of aluminum foil with burn marks on the bottom." Id. at 136.

In the bedroom, Trooper Franklin found "a corner cut sandwich bag" which was significant because "a common way to package methamphetamine" is by placing it into a corner of the bag and then cutting "the corner off the bag." Id. at 137. He also discovered metal scales which could be used to weigh small amounts of substances and a leather belt with the belt buckle removed which, based upon his training and experience, he recognized as significant because such belts are used when injecting drugs using a syringe. He found an open can of paint thinner, which is used as an organic solvent in the production of methamphetamine, on the TV stand and also found "two 11 oz. Johnsen's ether cans which is the same brand and same size that was sold" to the customer via the cash transaction at Auto Zone on April 17, 2010. Id. at 139. The cans had holes "punched" in the bottom, indicating to Trooper Franklin based upon his training and experience that the cans had been used in the manufacture of methamphetamine. Id. at 140.

Further, he discovered a burn pile containing blue coated gloves, a partially burnt plastic bottle containing a white crystal substance "consistent with HCL generators" that he had previously observed and also containing "sludge in the bottom" that was "consistent with the sludge in [an] HCL generator." Id. at 140-141. The burn pile also contained four partially burnt cans of ether which had been punched, portions of aluminum foil with burn marks, two partially burnt blister packages in which pseudoephedrine is typically contained, and a light bulb with the filament removed and residue on the inside. Based upon his training and experience, Trooper Franklin

5

recognized that both the aluminum foil and light bulb are devices which may be used to smoke methamphetamine. He also found seven razor blades and a pipe which was threaded on both ends and which could be used to mix various ingredients in the production of methamphetamine.

That same day, on June 15, 2010, Lainhart was charged with Count I, conspiracy to manufacture methamphetamine as a class B felony;[5] Count II, manufacturing methamphetamine as a class B felony; and Count III, possession of methamphetamine as a class D felony. On April 4, 2011, the court held a jury trial in which evidence consistent with the foregoing was presented. During voir dire, a member of the venire responded to a question by the prosecutor regarding whether they knew Lainhart by stating that his niece, Bonnie Scarette, had been "arrested at the time with him." Id. at 54.

At trial, Trooper Franklin testified that during the search of the property he discovered two condoms containing numerous prescription pills including muscle relaxers in the master bedroom. He testified that there were multiple pieces of evidence indicating Lainhart lived at the Laurel Road property including that Lainhart listed that address on the pseudoephedrine logs and would have had to use his driver's license to do so, that he had previous opportunities to speak with Lainhart at the residence from related circumstances, and that a month prior he was at the Laurel Road property to speak with Beeson, and Lainhart was present at that time. On cross examination, Trooper Franklin

---

[5] The original charging information was titled Count I "Manufacture Methamphetamine." However, the charging information cites to Ind. Code § 35-41-5-2, which is the conspiracy statute, and it charges that Lainhart "did . . . conspire to manufacture methamphetamine . . . ." Appellant's Appendix at 26. On March 29, 2011, the State filed a motion for leave to amend the information and change the title of Count I to "Conspiracy to Manufacture Methamphetamine" and noted that the amendment "is to form only and not substantive." Id. at 41-42.

6

testified that fingerprints and DNA were not collected on the items seized during the search. He testified on redirect that it was his opinion that methamphetamine had been manufactured at the Laurel Road property on a date prior to June 15, 2010, when the search warrant was executed.

Audra Yovanovich, a forensic scientist with the Indiana State Police Laboratory Division, testified that State's Exhibit 1, the coffee grinder, was found to contain ephedrine and/or pseudoephedrine. She testified that State's Exhibit 2, identified as coffee filters, similarly tested positive for ephedrine and/or pseudoephedrine. She also testified that State's Exhibit 3, which she described as "twenty five pieces of foil containing residue and a[n] empty blister pack," tested positive for methamphetamine and pseudoephedrine. Id. at 111. State's Exhibits 1, 2, and 3 were admitted into evidence without objection.

Beeson testified that in January 2010 she lived at the Laurel Road property with Lainhart and her daughter. She testified that she had previously been married to Lainhart but that they had divorced four years prior. Beeson testified that in January 2010, she moved into the Laurel Road property because Lainhart "told [her] he was gunna [sic] go to jail on an intimidation charge," and asked her if she "would come out and look after his house and his dogs while he went away." Id. at 181. Beeson also testified that she lived in Cincinnati for a brief time in February and March, but that she "went back" to the Laurel Road property in April 2010, and that Lainhart was living at the home the entire time in 2010. Id. Beeson testified that Lainhart's parents live next door on Laurel Road. Beeson testified that Lainhart moved out on June 11, 2010, when "he went to the Beacon House in Indianapolis" which was a rehab facility or halfway house, and that she

7

remained living on Laurel Road until early July.  Id. at 183.  She testified that she purchased pseudoephedrine on three occasions between April and June of 2010 so that Lainhart could manufacture methamphetamine, and that in 2010 Lainhart manufactured methamphetamine every seven to ten days.

The jury found Lainhart guilty as charged.  On May 4, 2011, the court held a sentencing hearing which was continued so that the parties could prepare memoranda regarding an argument raised by Lainhart that Counts I and III be vacated pursuant to double jeopardy principles.  On May 18, 2011, the court held a sentencing hearing and ruled that double jeopardy did not apply to Lainhart's conviction under Count I but ordered that Count III be vacated, noting that the State had indicated at the initial sentencing hearing that Count III was a lesser included offense.  The court sentenced Lainhart to twenty years each on Counts I and II to be served consecutively.  The court also determined that Lainhart's crimes constituted a single episode of criminal conduct and capped his sentence at thirty years.  Thus, Lainhart was sentenced to an aggregate term of thirty years in the Department of Correction.  Additional facts will be provided as necessary.

## I.

The first issue is whether Lainhart's convictions violate the prohibition against double jeopardy.  Lainhart argues that the same evidence was used to establish the essential elements of his convictions under Counts I and II.  Specifically, he argues that "[g]iven the lack of specific evidence as to when all of the methamphetamine allegedly was produced, possessed, or consumed," that "methamphetamine on the foil pieces also could have been the methamphetamine which the jury convicted Lainhart of

8

manufacturing and the methamphetamine which Lainhart and [Beeson] allegedly conspired to manufacture," and that "these circumstances demonstrate the jury could have determined the methamphetamine which Lainhart allegedly conspired with [Beeson] to manufacture was the same methamphetamine which Lainhart actually manufactured." Appellant's Brief at 16-17.

The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. In Richardson v. State, the Indiana Supreme Court developed a two-part test for Indiana double jeopardy claims, holding that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind. 1999).

Initially, we note that under traditional double jeopardy analysis, a conspiracy prosecution is not barred under the statutory elements test because the conspiracy and the manufacturing methamphetamine statutes each require proof of a fact which the other does not. See Boles v. State, 595 N.E.2d 272, 273 (Ind. Ct. App. 1992) (citing Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180 (1932)). Here, Lainhart appropriately confines his arguments to the "actual evidence test." Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008). To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable

possibility that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. Id. The Indiana Supreme Court has determined the possibility to be remote and speculative and therefore not reasonable when finding no sufficiently substantial likelihood that the jury used the same evidentiary facts to establish the essential elements of two offenses. Hopkins v. State, 759 N.E.2d 633, 640 (Ind. 2001) (citations omitted).

The charging information for Count I alleges that Lainhart "did . . . unlawfully, knowingly or intentionally, conspire to manufacture methamphetamine, with intent to manufacture methamphetamine, he agreed and conspired with [Beeson] to manufacture methamphetamine, and he performed an overt act in furtherance of the conspiracy by purchasing the pseudoephedrine, a key ingredient in the process of manufacturing methamphetamine." Appellant's Appendix at 42. The charging information for Count II alleges that Lainhart "did . . . unlawfully, knowingly or intentionally, manufacture methamphetamine or possess with intent to manufacture methamphetamine." Id. at 27.

First, regarding the conspiracy with Beeson to manufacture methamphetamine charge, the record reveals that the State presented evidence that Lainhart purchased pseudoephedrine from various sources on the following dates in 2010: April 5, April 13, April 26, May 9, May 30, June 7, and June 9. Also, Beeson purchased pseudoephedrine on May 9, May 20, and June 2, 2010. At trial, Beeson testified that her purchases of pseudoephedrine were for the purpose of Lainhart manufacturing methamphetamine.

Regarding Count II, manufacturing methamphetamine, the record reveals that the State presented evidence, including the pseudoephedrine logs, the testimony of Beeson

10

and Marshall, and the condoms filled with prescription pills recovered from the master bedroom, that Lainhart resided at 18022 Laurel Road, Connersville IN, 47331, which was searched by Trooper Franklin on June 15, 2010. Trooper Franklin discovered numerous items throughout the house and in a burn pile evidencing that methamphetamine had been manufactured on the premises including unused coffee filters, a large commercial funnel, glue sticks, a container of lye or sodium hydroxide, a bottle of sulfuric acid, a large green thermos, a black plastic and metal strainer, and thirteen glass jars. Also, he discovered used coffee filters and a coffee grinder, each of which contained substances which tested positive for pseudoephedrine, as well as pieces of foil and an empty blister pack which tested positive for methamphetamine and pseudoephedrine. In addition to this physical evidence, Marshall testified that on April 17, 2010, he traveled to Connersville and purchased pseudoephedrine for Lainhart, and Lainhart subsequently invited him to his house on Laurel Road. Marshall testified that he visited Lainhart's house that evening where the men manufactured methamphetamine on Lainhart's driveway. Lainhart gave Marshall a quarter gram of methamphetamine as a result of their activities.

Based upon the record, we find that clear and independent evidence was presented regarding the two crimes for which Lainhart was convicted, and accordingly we cannot say that there exists a reasonable possibility that the evidentiary facts used by the jury to establish Lainhart's conviction under Count I may also have been used to establish the essential elements of Count II. Simply, there is not a sufficiently substantial likelihood that the evidence of Beeson's agreement with Lainhart to manufacture methamphetamine and Lainhart's purchasing of pseudoephedrine was used to prove Count II, manufacturing methamphetamine, which the State proved via the testimony of Marshall and the physical

11

evidence discovered at the Laurel Road property. Thus, we conclude that Lainhart's convictions for Counts I and II do not violate Indiana's prohibition against double jeopardy.[6] See Micheau v. State, 893 N.E.2d 1053, 1066 (Ind. Ct. App. 2008) (holding that the defendant's convictions for possession of methamphetamine with the intent to manufacture and attempting to manufacture more than three grams of methamphetamine did not violate Indiana's double jeopardy clause), trans. denied; Storey v. State, 875 N.E.2d 243, 250 (Ind. Ct. App. 2007) (holding that the State "set forth independent evidence" that the defendant committed the offenses of possession of methamphetamine in excess of three (3) grams with intent to deliver and manufacturing methamphetamine in excess of three (3) grams, and the defendant's convictions did not violate double jeopardy), trans. denied.

## II.

The second issue is whether the court abused its discretion and committed fundamental error by admitting evidence of Lainhart's uncharged misconduct. Specifically, Lainhart contends that the admission of certain evidence violated Ind. Evidence Rule 404(b).[7]

---

[6] We note that the Indiana Supreme Court has identified five common law or statutory double jeopardy categories in addition to the constitutional actual evidence test including incidents in which the "conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is *the very same act* as another crime for which the defendant has been convicted and punished." Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002) (emphasis added). Here, the overt act of Lainhart purchasing pseudoephedrine is not the very same act as Count II, the manufacturing of methamphetamine.

[7] Lainhart also appears to challenge the admission into evidence of a prior conviction for intimidation as a violation of Ind. Evidence Rule 609. Ind. Evidence Rule 609 provides: "For the purpose of *attacking the credibility of a witness*, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement." (Emphasis added). However, Lainhart did not testify at trial. Lainhart

We review the trial court's ruling on the admission of evidence for an abuse of discretion. Noojin v. State, 730 N.E.2d 672, 676 (Ind. 2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

However, as Lainhart recognizes, in some instances the challenged evidence was not objected to when it was presented at trial. To avoid waiver of this issue regarding such evidence, Lainhart invokes the fundamental error doctrine, which permits appellate review of otherwise procedurally defaulted claims. See Southward v. State, 957 N.E.2d 975, 977 (Ind. Ct. App. 2011). "The fundamental error doctrine is 'extremely narrow,' requiring an error 'so prejudicial that a fair trial is impossible.'" Id. (quoting Sasser v. State, 945 N.E.2d 201, 203 (Ind. Ct. App. 2011), trans. denied). "Blatant violations of basic principles, coupled with substantial potential or actual harm and denial of due process constitute fundamental error." Id.; see also Benson v. State, 762 N.E.2d 748, 755 (Ind. 2002) ("To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. To be fundamental error, an error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.").

Ind. Evidence Rule 404(b) provides:

---

does not point to authority to show that Ind. Evidence Rule 609 applies in this context.

13

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Rule 404(b) is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." Hicks v. State, 690 N.E.2d 215, 218 (Ind. 1997); see also Southward, 957 N.E.2d at 977 ("Use of Evid.R. 404(b) evidence carries with it the risk of the 'forbidden inference' that a person's bad act on a prior occasion shows that the act now at issue conforms with such person's propensity to commit said bad acts."). "Evid.R. 404(b) evidence is not wholly precluded, however, and may be admissible for other purposes" as noted in the rule. Southward, 957 N.E.2d at 977. In such cases, the trial court must find that the Ind. Evidence Rule 404(b) evidence is relevant to an issue other than propensity, and balance such evidence's probative value against its prejudicial effect under Indiana Evidence Rule 403. Id.

In making his argument on this point, Lainhart points to three instances from the jury trial. Specifically, he makes arguments regarding the introduction of his "previous conviction for Intimidation, his alleged plans to take prescription pills into jail with him, and his prosecution in another case in which Scarette was involved . . . ." Appellant's Brief at 23.

We begin by addressing the first two instances raised by Lainhart regarding the intimidation conviction and the admission of the two condoms filled with prescription pills. During the State's redirect examination of Trooper Franklin, the State moved to

14

admit the condoms discovered in the master bedroom at the Laurel Road property, and Lainhart objected, arguing that such evidence was more prejudicial than probative under Ind. Evidence Rule 403 or that it was evidence of uncharged other bad acts. The prosecutor responded that the evidence was being admitted to prove Lainhart's residence, noting that he was "not saying these are illegal," that he "didn't even identify them what they are," and that he would "tie it together with [Beeson] when she" testified. Transcript at 159. The court noted Lainhart's objection and admitted the evidence.

The State subsequently called Beeson who testified regarding her moving into the Laurel Road property, that Lainhart told her "he was gunna [sic] go to jail on an intimidation charge, and he ask [sic] me if I would come out and look after his house and his dogs while he went away, and I said that I would." Id. at 181. Also, over Lainhart's objection, Beeson testified that Lainhart packaged the prescription pills in the condoms recovered from the bedroom because he "was going to jail and . . . he was going to take" them into the jail by inserting them into his rectum. Id. at 196.

The court overruled Lainhart's objection regarding the condoms on the basis that the evidence was being offered to prove that Lainhart was living at the Laurel Road property. The court instructed the jury after Beeson's testimony that her testimony could be considered only "to show you that she was in a place where he was and that she observed something that was his . . . . [Y]ou can consider in terms of location." Id. at 198. The court instructed the jury not to consider the evidence for the purpose that Lainhart "told her he was going to jail on some unrelated crime, and that he was going to use these items and this method to get those items into the facility that would hold him under some unrelated crime." Id.

To the extent that Lainhart objected, we cannot say that the court abused its discretion in overruling Lainhart's objection to the admission of the condoms for the limited purpose of proving Lainhart's residency. The court properly provided a limiting instruction telling the jury that it could consider the condoms for the sole purpose of residency. Further, we cannot conclude under the circumstances that the prejudicial effect of the testimony of Beeson outweighed its probative value under Ind. Evidence Rule 403. The admission of this evidence under the circumstances as limited by the trial court does not require reversal of Lainhart's convictions. Also, to the extent that Lainhart challenges the introduction of his intimidation charge, we note that he did not object at trial to Beeson's testimony on this point, and also the court as part of its limiting instruction stated that the jury was not to consider the evidence presented for the purpose that Lainhart told Beeson that he was going to jail on some unrelated crime. Accordingly, we cannot say that any error in admitting this evidence was so prejudicial as to result in a denial of Lainhart's due process rights, and accordingly find that the admission of this evidence did not constitute fundamental error.

Finally, Lainhart argues that the court abused its discretion during voir dire and that the fundamental error doctrine applies. Lainhart draws our attention to the following colloquy between the prosecutor and a prospective juror, who ultimately did not serve on the jury panel, during voir dire:

> JUROR: I don't know [Lainhart] personally, but I have a niece that was arrested at the time with him.
>
> PROSECUTOR: Who is your niece?
>
> JUROR: Do I need to say? Bonnie Scarett [sic].

16

PROSECUTOR:     And the niece your [sic] talking about is not this case.

JUROR:     Ok.

PROSECUTOR:     But . . . . are . . . . . is that correct?

JUROR:     I (inaudible).

PROSECUTOR:     You heard the witnesses that the States [sic] intends to call. That would be Peggy Beeson, Kenny Marshall, Trooper Franklin and so Peggy Beeson's not your niece, so . . . .

JUROR:     No.

PROSECUTOR:     And you don't know Kenny Marshall?

JUROR:     No.

PROSECUTOR:     So if its [sic] got nothing to do with . . . . in the case were [sic] talking . . . . could you be fair and impartial and I say only you can decide that?

JUROR:     I'm not sure.

Id. at 54-55.

We note that regarding this colloquy, the State was not presenting evidence but was merely conducting voir dire. Indeed, Lainhart does not challenge the propriety of the State's questioning of the jurors. See Sundling v. State, 679 N.E.2d 988, 994 (Ind. Ct. App. 1997) ("It is axiomatic that voir dire is not to be used to begin trying the case before any evidence is taken.") (citing Robinson v. State, 260 Ind. 517, 297 N.E.2d 409 (1973); Hopkins v. State, 429 N.E.2d 631 (Ind. 1981)), reh'g denied (Chezem, J., dissenting); see also Sundling, 679 N.E.2d at 994-995 ("Our supreme court has held that "it is not the

function of voir dire examination to '*inform*' the jurors of anything.'') (quoting <u>Blackburn v. State</u>, 271 Ind. 139, 390 N.E.2d 653, 656 (1979)) (Chezem, J., dissenting). This colloquy cannot reasonably be construed as a presentation of evidence by the State, and it does not constitute fundamental error. The prospective juror made a passing reference to an arrest involving Lainhart and Bonnie Scarette. The prospective juror did not state specific charges upon which Lainhart was arrested in this matter. To that end, during the State's case-in-chief Marshall testified that Scarette was present with him and Lainhart on the evening of April 17, 2010, when they cooked methamphetamine on Lainhart's driveway. The prospective juror stated that "I don't know [Lainhart] personally, but I have a niece that was arrested *at the time* with him." Transcript at 54 (emphasis added). Accordingly, we cannot say that any error in voir dire was so prejudicial as to result in a denial of Lainhart's due process rights, and accordingly find no fundamental error.

III.

The third issue is whether the State failed to establish a proper chain of custody for certain evidence. As noted above, the sufficiency of an evidentiary foundation is a matter left to the trial court's sound discretion, and we will reverse only upon a showing of an abuse of that discretion. <u>Payne v. State</u>, 658 N.E.2d 635, 644 (Ind. Ct. App. 1995), <u>trans. denied</u>. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. <u>Roush v. State</u>, 875 N.E.2d 801, 808 (Ind. Ct. App. 2008).

> Regarding chain of custody in particular, the Indiana Supreme Court has held:

> The requirement that a chain of custody be proven by a party submitting physical evidence at trial is an attempt to satisfy the goal of assuring the trial court that the evidence submitted has not been substituted or tampered

18

with. While the State is not required to exclude every possibility of tampering, the chain of custody must give reasonable assurances that the property passed through the hands of the parties in an undisturbed condition.

Johnson v. State, 580 N.E.2d 670, 671-672 (Ind. 1991) (quotation and citation omitted). Further, "the State need not establish a perfect chain of custody whereby any gaps go to the weight of the evidence and not to admissibility." Culver v. State, 727 N.E.2d 1062, 1067 (Ind. 2000), reh'g denied.

Here, we find that the State demonstrated chain of custody for the exhibits in question. Trooper Franklin testified regarding the coffee grinder, marked as State's Exhibit 1, that he placed his initials at the top seal and handwrote the case number, the item number, the property receipt, his name, the "P number" and the date he packaged the evidence, and that these notations were recognizable by him as he was handling the exhibit on the witness stand. Transcript at 132. He testified that after he packaged the exhibit he "took it into evidence and sent it to the lab" and that after testing "[i]t was returned to the evidence room and then [he] picked it up from there and brought it here." Id. Trooper Franklin also testified that State's Exhibit 1 looked the same as when he "got it" except that the powder originally contained inside was missing because it was removed for testing. Id. Trooper Franklin testified similarly regarding State's Exhibits 2 (coffee filters) and 3 (portions of aluminum foil displaying burn marks on the bottom).

Yovanovich testified that for items she tests she requests an item from the evidence clerk who procures it from their "secured vault," and they will "do a hand to hand transaction which is pen protected." Id. at 107. Yovanovich testified that "once the evidence comes into the laboratory a bar code is put on it with the laboratory file number

19

so [she] can track the evidence from that bar code," and that "once [she has] opened evidence [she] will write the . . . . this case number, the item number and [her] initials on the evidence." Id. at 107-108.

Regarding State's Exhibit 1, the coffee grinder, Yovanovich testified that she could identify it "by the bar code that was placed on" it, that the lab assigns each piece of evidence a file number and item number which were listed on the bottle, and that her initials were on the back of the bottle containing the evidence as well as "on the seal at the bottom right" which were made when she resealed the bottle.[8] Id. at 108. Regarding State's Exhibit 2, the coffee filters, she testified that the exhibit similarly contained the file number, was labeled item number 11, displayed a bar code, and that her initials were on the bag containing the evidence and along the seal at the bottom. Regarding State's Exhibit 3, Yovanovich testified that although the laboratory file number and case numbers appeared to "have been rubbed off," she was still confident that the exhibit was in the same package she received from the Indiana State Police because "it still has [her] markings at the seal, so [she] did open that and reseal it, and it has the same agency case number on the bar code, and also the internal packaging matches the description of what [she] did analyze." Id. at 115.

Based upon our review of the record, we conclude that the State sufficiently demonstrated chain of custody and the trial court did not abuse its discretion in admitting the challenged exhibits.

IV.

---

[8] The exhibits pertaining to this case were labeled with the file number "10C130." Transcript at 108.

20

The fourth issue is whether the evidence presented was sufficient to support Lainhart's convictions for conspiracy to manufacture methamphetamine and manufacturing methamphetamine. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

The offense of conspiracy to manufacture methamphetamine is governed by Ind. Code § 35-41-5-2 and Ind. Code § 35-48-4-1.1. Ind. Code § 35-41-5-2 provides that "[a] person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony[,]" and "either the person or the person with whom he agreed performs an overt act in furtherance of the agreement." Ind. Code § 35-48-4-1.1(a), provides that "a person who: (1) knowingly or intentionally: (A) manufactures . . . methamphetamine, pure or adulterated; or (2) possesses, with intent to: (A) manufacture . . . methamphetamine, pure or adulterated; commits dealing in methamphetamine, a Class B felony . . . ." As noted above, in its charging information for Count I, the State alleged that Lainhart:

> [D]id . . . unlawfully, knowingly or intentionally, conspire to manufacture methamphetamine, with intent to manufacture methamphetamine, he agreed and conspired with [Beeson] to manufacture methamphetamine, and he performed an overt act in furtherance of the conspiracy by purchasing the

21

pseudoephedrine, a key ingredient in the process of manufacturing methamphetamine.

Appellant's Appendix at 42. Thus, to convict Lainhart under Count I for conspiracy to manufacture methamphetamine, the State needed to prove that Lainhart: (1) with intent to manufacture methamphetamine; (2) agreed with Beeson to commit the felony; and (3) an overt act was performed by Lainhart in furtherance of that agreement by his purchasing pseudoephedrine. Further, to convict Lainhart under Count II for manufacturing methamphetamine, the State needed to prove that Lainhart: (1) knowingly or intentionally; (2) manufactured or possessed with intent to manufacture; (3) methamphetamine.

First, Lainhart challenges both of his convictions under the "incredible dubiosity" rule. Lainhart argues that Beeson's testimony was coerced because she was facing the same charges and "in exchange for her testimony, she was allowed to plead guilty to Maintaining a Common Nuisance, a Class D felony." Appellant's Brief at 32. Lainhart also argues that the State failed to link Lainhart to the three purchases of pseudoephedrine by Beeson. Lainhart argues that Beeson "certainly had substantial motivation to pin the blame on Lainhart."[9] Id. Lainhart also argues that "Marshall's testimony was coerced because he was able to escape prosecution altogether for his methamphetamine manufacturing and use by implicating Lainhart." Id. at 35. He also argues that

---

[9] Lainhart also suggests that Beeson indicated in a letter she wrote to him on December 23, 2010, that she believed he was innocent of the charges. Lainhart argues that, in the letter, Beeson "wrote that she was wrong to have allowed 'Johnny' to be unsupervised in Lainhart's house" and that she "chose to 'look the other way.'" Appellant's Brief at 33. However, Beeson indicated at trial that, in the letter, she was talking about leaving Johnny Gibson, who was her daughter's half brother on her father's side, unsupervised in her apartment in Brookville which Trooper Franklin had "busted for meth lab on January 13" of 2010. Transcript at 202.

22

Marshall's testimony that he went to Trooper Franklin and implicated himself in the manufacturing activity is wholly improbable.

Initially, to the extent that Lainhart challenges the testimony of Beeson and Marshall and argues that they testified against him to obtain leniency, we note that if there is an existing agreement between the State and one of its witnesses, a prosecutor has a duty to reveal it. Whatley v. State, 908 N.E.2d 276, 283 (Ind. Ct. App. 2009) (citing Rubalcada v. State, 731 N.E.2d 1015, 1024 (Ind. 2000) (noting that a prosecutor must disclose "any agreement made with the State's witness, such as promises, grants of immunity, or reward offered in return for testimony")), trans. denied. The purpose of this rule is to assist the trier of fact in assessing the witness's credibility. See id. (citing McCorker v. State, 797 N.E.2d 257, 266 (Ind. 2003)). Here, Beeson testified that she had been charged with the same crimes as Lainhart but that she pled guilty to a lesser charge of maintaining a common nuisance in open court, and she indicated that she was not receiving a benefit in exchange for her testimony on that day. Also, although Marshall initially testified that neither Trooper Franklin nor the State made any promises in exchange for his testimony, he later admitted that he was promised that no charges would be filed against him if he cooperated and testified. Thus, the jury was able to consider any promises of leniency in considering the testimony of Beeson and Marshall, and Lainhart's arguments regarding their testimony on this score amount to an invitation that we reweigh the evidence, which we cannot do. See Jones v. State, 783 N.E .2d 1132, 1139 (Ind. 2003).

Further, to the extent Lainhart asserts that the incredible dubiosity rule requires reversal of his convictions under both Counts I and II, we note that the rule applies only

in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is stated as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Fajardo v. State, 859 N.E.2d 1201, 1208 (Ind. 2007) (quoting Love, 761 N.E.2d at 810). Here, Lainhart fails to show that the testimony of either Beeson or Marshall was inherently contradictory or inconsistent. Indeed, such testimony comported with the pseudoephedrine logs discovered by Trooper Franklin. Further, we cannot say that the testimony of either Beeson or Marshall was so inherently improbable that no reasonable person could believe it. Accordingly, Lainhart does not demonstrate how the testimony against him was incredibly dubious.

Finally, to the extent that Lainhart argues regarding Count II that the State "never linked Lainhart to the methamphetamine on the aluminum foil pieces" discovered at the Laurel Road property and likewise did not sufficiently link Lainhart to the manufacturing activity on the premises, we note that ample evidence was presented demonstrating that methamphetamine had been manufactured at the Laurel Road property which was Lainhart's residence, including the foil pieces which contained methamphetamine. Marshall testified that Lainhart manufactured methamphetamine on the premises on April 17, 2010, after the men drove to Connersville to purchase pseudoephedrine and ether for use in the manufacturing. Beeson testified that Lainhart manufactured methamphetamine

24

every seven to ten days. Lainhart's arguments are an invitation for us to reweigh the evidence and reassess the credibility of the witnesses, which we will not do. See Gregory v. State, 885 N.E.2d 697, 705-706 (Ind. Ct. App. 2008), trans. denied.

V.

The fifth issue is whether Lainhart's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). Lainhart argues that his maximum sentence is inappropriate.

Our review of the nature of the offense reveals that Lainhart manufactured methamphetamine at the Laurel Road property. He conspired with Beeson to manufacture methamphetamine, in which Beeson purchased pseudoephedrine on three occasions pursuant to the conspiracy. Beeson testified at trial that Lainhart manufactured methamphetamine every seven to ten days. Marshall also testified that he purchased pseudoephedrine for the purpose of Lainhart manufacturing methamphetamine.

Our review of the character of the offender reveals that Lainhart has a very lengthy criminal history. As a juvenile, Lainhart was adjudicated delinquent and placed on probation for two years for charges of theft, possession of marijuana, and illegal possession of alcohol by a minor. As an adult, Lainhart's criminal history spans twenty-five years. In 1985, Lainhart was convicted of illegal possession of hashish and minor

25

consuming alcohol and was sentenced to one year suspended to probation. In 1986, Lainhart was convicted of driving under the influence and possession of marijuana as a class D felony and was sentenced to four years with all but thirty days suspended to probation. As a result, he was found to have violated his 1985 probation. Lainhart was also convicted in 1986 of minor consuming alcohol. In January 1992, he was convicted of "Driving Under the Influence Refusal" as a class D felony which was amended to a class C misdemeanor and he was sentenced to sixty days probation. Appellant's Appendix at 139. In October 1992, Lainhart was found guilty of public intoxication as a class B misdemeanor and was sentenced to 180 days suspended to probation. On February 28, 1997, he was convicted of carrying a handgun without a license as a class C felony and criminal recklessness with a deadly weapon as a class D felony and was sentenced to eight years with four years suspended to probation. That same day, under a different cause number, Lainhart was sentenced to three years in the department of correction for battery on a person under the age of fourteen as a class D felony. On March 4, 2003, Lainhart was sentenced to one year with 355 days suspended to probation for resisting law enforcement as a class A misdemeanor and 180 days suspended for reckless driving as a class B misdemeanor. In 2006, Lainhart was sentenced to one year suspended to probation for possession of precursors as a class A misdemeanor. That same year, under different cause numbers, Lainhart was sentenced to one year suspended for fleeing law enforcement as a class D felony and one year with two months suspended for interference with law enforcement animal as a class A misdemeanor to be served concurrently, and also one year with two months suspended for failure to appear as a class A misdemeanor also to be served concurrently. On September 30, 2010, Lainhart

26

was sentenced to one year for intimidation as a class A misdemeanor. Finally, at the time the presentence investigation report was completed, Lainhart had a pending jury trial for manufacturing methamphetamine as a class B felony set for June 2011.

After due consideration for the sentence imposed by the trial court, and in light of Lainhart's criminal history, we cannot say that Lainhart's aggregate sentence of thirty years for conspiracy to manufacture methamphetamine and manufacturing methamphetamine as class B felonies is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Lainhart's convictions and sentence for conspiracy to manufacture methamphetamine and manufacturing methamphetamine.

Affirmed.

BAKER, J., concurs.

KIRSCH, J., concurs as to Issues I, III, IV and V, and concurs in result as to Issue II.

27